# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES MACK, | ) |
| | ) |
| Plaintiff, | ) CIVIL ACTION NO. 3:10-264 |
| | ) |
| v. | ) JUDGE KIM R. GIBSON |
| | ) |
| JOHN YOST, *Warden*; TIM KUHN, | ) |
| *Associate Warden*; JEFF STEVENS, | ) |
| *Trust Fund Officer*; D. VESLOSKY, | ) |
| *Correctional Officer*; and DOUG | ) |
| ROBERTS, *Correctional Officer*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER OF COURT

### I. SYNOPSIS

This matter comes before the Court on Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. No. 36). Plaintiff Charles Mack, a federal inmate at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto"), seeks damages resulting from alleged incidents of religious discrimination. Defendants contend, *inter alia*, that Mack's allegations do not give rise to constitutional or statutory claims and that Mack has failed to exhaust available administrative remedies. For the reasons that follow, Defendants' motion to dismiss will be granted.

### II. JURISDICTION AND VENUE

The Court exercises federal subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343. Venue is proper under 28 U.S.C. 1391(b)(2) because a substantial portion of the events or omissions giving rise to the claims occurred in the Western District of Pennsylvania.

## III. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Charles Mack was hired to work at the FCI Loretto commissary in May 2009, where he earned about $110 per month. (*See* Doc. No. 22, Am. Compl. ¶¶ 8, 11). As a commissary employee, Mack stocked shelves, filled inmate commissary orders, and cleaned the work area. (*See id.* ¶ 9). Mack alleges that, on or about October 2009, Defendant Doug Roberts, the Trust Fund Supervisor, "forcefully slapped [him] in the center of his back" and placed a sticker on his back stating "I LOVE BACON." (*See id.* ¶¶ 12, 16). Mack also alleges that Defendant Samuel Venslosky,[1] the Warehouse Worker Foreman, failed to reprimand Roberts even though he saw the incident. (*See id.* ¶ 15).

Mack is a practicing Muslim who does not eat or handle pork-based products. (*Id.* ¶ 16). The day after the initial incident, Mack allegedly asked Roberts why he placed the sticker on Mack's back when Roberts "knew that pork products are forbidden in Islam, and offensive to [M]uslims." (*Id.* ¶ 17). Roberts purportedly responded, "[W]hy? [D]o you have a problem with that?," and thereafter responded, "[D]on't worry[,] you'll be looking for another job soon!" (Doc. No. 22, Am. Compl. ¶ 17). Mack avers that, approximately two days later, Roberts shouted in the presence of inmate workers, "[T]here is no good muslim, except a dead muslim!" (*Id.* ¶¶ 18–19). According to Mack, these statements created a "tense work environment," causing Mack to believe that "he could possibly be harmed because of his religious beliefs." (*Id.* ¶ 20).

Mack thereafter orally complained to Defendant Jeffrey Stephens,[2] who is the former Trust Officer and supervisor to Roberts and Venslosky. (*Id.* ¶ 21). Stephens responded by stating that he would "look into it." (*Id.*). Approximately one week later,

---
[1] Mack incorrectly identifies Samuel Venslosky as "D. Veslosky."
[2] Mack incorrectly identifies Jeffrey Stephens as "Jeffrey Stevens."

2

Venslosky fired Mack from his commissary job for "bringing in commissary lists." (*Id.* ¶ 22). Believing that the actual reason for his termination was retaliation for complaining about the alleged harassment, Mack informed Stephens about the situation. (*See* Doc. No. 22, Am. Compl. ¶¶ 23–24).

Mack initiated the "informal resolution process" at FCI Loretto on November 13, 2009, when Mack requested to know in writing why he was fired from his commissary job. (*See* Doc. No. 22, Am. Compl. ¶ 25; Doc. No. 38-3 at 10). On November 13, 2009, Stephens responded to this grievance, BP-S148.055 ("Inmate Request to Staff Form"), stating, "Inmate was caught bringing slips in for inmates." (Doc. No. 38-3 at 10). Mack subsequently made an oral complaint to Defendant John Yost, the former Warden of FCI Loretto. (*See* Doc. No. 22, Am. Compl. ¶ 27). Yost allegedly responded, "[W]hat do you expect me to do?" (*Id.* ¶ 28).

The administrative grievance process began on November 21, 2009, when Mack filed Form BP-8½ ("Administrative Remedy Informal Resolution Form"). (*See* Doc. 38-3 at 5). Mack then exhausted the grievance process by filing Forms BP-9 ("Request for Administrative Remedy"); BP-10 ("Regional Administrative Remedy Appeal"); and BP-11 ("Central Office Administrative Remedy Appeal"). (*See* Doc. 38-3 at 1–14).

On October 19, 2010, Mack filed suit against Yost and other prison personnel under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* (2006). (*See* Doc. No. 1, Compl. ¶¶ 50–54). Alleging violations of the First Amendment to the United States Constitution, Mack seeks nominal damages, punitive damages, and injunctive relief. (*See id.*). The United States

magistrate judge assigned to the case issued a Report and Recommendation ("R&R"), concluding that the complaint should be dismissed without leave to amend for failure to state a claim. (Doc. No. 3 at 1).

After requiring Mack to clarify his objections to the R&R, this Court adopted the R&R and dismissed the complaint on November 30, 2010. (*See* Doc. No. 8). On appeal, the Third Circuit Court of Appeals vacated this Court's dismissal of Mack's complaint, directing this Court to reconsider its previous ruling. *See Mack v. Yost*, 427 F. App'x 70 (3d Cir. 2011) (Doc. No. 17-1 at 8). In particular, the Third Circuit instructed this Court to reevaluate Plaintiff's retaliation claim and allegations of mistreatment on the basis of religion. (Doc. No. 17-1 at 5, 6).

This Court issued a Memorandum Order on April 12, 2012, instructing Mack to file an amended complaint that identifies the "constitutionally protected conduct" forming the basis of his retaliation claim(s). (*See* Doc. 21 at 2). This Court further construed Mack's original complaint as attempting to assert the following claims: (1) a violation of the Free Exercise Clause of the First Amendment; and (2) a violation of the RLUIPA. (*Id.*). After providing the relevant legal standards, this Court instructed Mack to identify the alleged mistreatment forming the basis of his free exercise and RLUIPA claims. (*See id.* at 3).

Mack filed an amended complaint (Doc. No. 22) on May 5, 2012, and Defendants filed the instant motion (Doc. No. 36) on October 4, 2012. Defendants assert that there have been no constitutional violations and, alternatively, that the doctrines of sovereign and qualified immunity bar Mack's claims. (Doc. No. 38 at 2–3). Defendants further assert that the RLUIPA does not apply to federal prisons and that Mack has failed to exhaust his available administrative remedies. (*See id.* at 3). Mack filed a memorandum in

4

opposition to Defendants' motion (Doc. No. 42) on November 29, 2012. The motion has been fully briefed and is ripe for disposition.

## IV. STANDARD OF REVIEW[3]

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a complaint or portion of a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Although the federal pleading standard has been "in the forefront of jurisprudence in recent years," *Fowler v. UPMC Shadyside*, 548 F.3d 203, 209 (3d Cir. 2009), the standard of review for a Rule 12(b)(6) challenge is now established.

In determining the sufficiency of the complaint, a district court must conduct a two-part analysis. First, the court must separate the factual matters averred from the legal conclusions asserted. *See Fowler*, 578 F.3d at 210. Second, the court must determine whether the factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint need not include "detailed factual allegations." *Phillips v. Cnty. of Allegheny*,

---

[3] Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (Doc. No. 38). Rule 12(d) of the Federal Rules of Civil Procedure provides as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d). A district court must provide the parties with adequate notice when converting a motion to dismiss into a motion for summary judgment. *See, e.g., Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989). The Court finds that converting the motion to dismiss into a motion for summary judgment is not appropriate in this case because Mack is a pro se prisoner litigant. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (discussing how district courts must provide notice to pro se prisoners when converting a motion to dismiss into a motion for summary judgment and, in particular, should inform pro se prisoners about the effects of not filing opposing affidavits). The Court will treat the instant motion as one to dismiss, using the standard of review set forth in this memorandum.

5

515 F.3d 224, 231 (3d Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, the court must construe the alleged facts, and draw all inferences gleaned therefrom, in the light most favorable to the non-moving party. *See id.* at 228 (citing *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 653 (3d Cir. 2003)). However, "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action . . . do not suffice." *Iqbal*, 556 U.S. at 678. Rather, a complaint must present sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 263 n.27 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

Ultimately, whether a plaintiff has shown a "plausible claim for relief" is a "context specific" inquiry that requires the district court to "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The relevant record under consideration includes the complaint and any "document integral or explicitly relied on in the complaint." *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If a complaint is vulnerable to dismissal under Rule 12(b)(6), the district court must permit a curative amendment, irrespective of whether a plaintiff seeks leave to amend, unless such amendment would be inequitable or futile. *Phillips*, 515 F.3d at 236; *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("[L]eave to amend generally must be granted unless the amendment would not cure the deficiency."). The Court is also mindful that, in cases such as this one, a prisoner's pro se complaint should be "held to less stringent standards than formal pleadings drafted by lawyers." *United States ex rel. Walker v. Fayette Cnty., Pa.*, 599 F.2d 573, 575 (3d Cir. 1979) (citing *Haines v. Kerner*, 404 U.S. 520, 521 (1972)).

## V. DISCUSSION

Defendants assert several theories on which they argue that a motion to dismiss is warranted. First, Defendants argue that Mack's *Bivens* claims should be dismissed because the allegations do not give rise to constitutional violations.[4] Second, Defendants argue that Mack has not established statutory violations under the RLUIPA. And third, Defendants assert that Mack has not exhausted available administrative remedies. The Court will address each of these arguments.

### A. Constitutional Claims under *Bivens*

Mack brings suit for alleged constitutional violations under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court held that a damages claim arose under the United States Constitution where federal officers, acting under color of federal law, violated the Fourth Amendment. *See id.* at 398. More recently, a "*Bivens* action" has been interpreted as "the federal equivalent of the § 1983 cause of action against state actors" and exists where federal officers, acting under color of federal law, violate a plaintiff's constitutional rights. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). Here, Mack raises two constitutional claims.[5] Mack avers that (1) Defendants discriminated against him based on his religion,

---

[4] Defendants further argue that the doctrines of qualified and sovereign immunity bar Mack's claims and that Defendants Yost, Kuhn, and Stephens should be dismissed because there is no allegation that they personally violated Mack's constitutional rights. (*See* Doc. No. 38 at 18–23). Because the Court will dismiss Mack's claims on other grounds, it is unnecessary to address these arguments.

[5] Defendants argue that Mack has not alleged an actionable Eighth Amendment claim. In Mack's original complaint, he asserted that his "unsafe [working] conditions" constituted "cruel and unusual punishment under the Eighth Amendment." (*See* Doc. No. 1, Compl. ¶ 51). However, Mack does not raise an Eighth Amendment issue in his amended complaint, (*see* Doc. No. 22, Am. Compl. ¶¶ 34–36), and Mack specifically states in his reply to Defendants' motion that he is not asserting an Eighth Amendment claim, (Doc. No. 42 at 10). Defendants also argue that, to the extent Mack raises a due process claim, it fails because inmates do not have a liberty or property interest in prison employment. (*See* Doc. No. 38 at 8–9). Mack states in his reply brief that he does not assert a property or liberty interest concerning his former work

in violation of his equal protection rights under the Fifth Amendment; and (2) that Defendants retaliated against him after he exercised his First Amendment right to seek redress. (*See* Doc. No. 22, Am. Compl. ¶¶ 34–36).

### 1. Equal Protection under the Fifth Amendment

Although Mack does not specifically raise an equal protection issue in his amended complaint, he argues in his reply to Defendants' motion to dismiss that he was "singled out . . . due to his religious faith" and that "no other inmate whom [sic] worked in the commissary was treated with hostility because of their religion." (Doc. No. 42 at 5). Defendants argue that Mack has failed to state an actionable equal protection claim to the extent one was raised in the amended complaint. The Court will address this argument in an effort to liberally construe Mack's amended complaint.

Although the Fifth Amendment does not contain an equal protection clause, the Supreme Court has interpreted the Fifth Amendment to contain an equal protection guarantee. *See, e.g., Abdul-Akbar v. McKelvie*, 239 F.3d 307, 316 (3d Cir. 2001) (citing *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 616 (1991). "Fifth Amendment equal protection claims are examined under the same principles that apply to such claims under the Fourteenth Amendment." *Id.* at 316–17 (citing *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200 (1995)). The Equal Protection Clause of the Fourteenth Amendment requires all persons "similarly situated" to be "treated alike" by state actors. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985). To state an equal protection claim, Mack must allege (1) that he is a protected class member and (2) that he was treated differently from similarly situated persons outside his protected class. *See Tillman v. Lebanon Co. Corr.*

---

assignment. (*See* Doc. No. 42 at 6). Because Mack has not raised these claims and, instead, he specifically rejects them, the Court will not address these arguments.

8

*Facility*, 221 F.3d 410, 423–24 (3d Cir. 2000); *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990). "Protected classes include those based upon suspect distinctions, such as race, religion, and alienage, and those impacting fundamental rights." *Trefelner ex rel. Trefelner v. Burrell Sch. Dist.*, 655 F. Supp. 2d 581, 589 (W.D. Pa. 2009).

Although Mack alleges that he was verbally harassed and discriminated against based on his religious affiliation, Mack has not identified any similarly situated individual whom prison officials treated differently. "Mere harassment based on a protected-class status without identification of similarly situated individuals outside of the class will not support an equal protection claim." *Baker v. Williamson*, CIV.1:CV-07-2220, 2010 WL 1816656 (M.D. Pa. May 5, 2010), *aff'd*, 453 F. App'x 230 (3d Cir. 2011) (citing *Hodge v. U.S. Dep't of Justice*, 372 F. App'x 264, 268 (3d Cir. 2010); *see also White v. Sch. Dist. of Phila.*, CIV.A. 05-0092, 2008 WL 2502137 (E.D. Pa. June 19, 2008), *aff'd*, 326 F. App'x 102 (3d Cir. 2009) ("To support a claim for violations of equal protection rights, '[a] plaintiff must at least allege and identify the actual existence of similarly situated persons who have been treated differently and that the government has singled out plaintiff alone for different treatment.'") (citations omitted). Accordingly, the Court will dismiss Mack's equal protection claim to the extent it was raised in the amended complaint.

### 2. Retaliation under the First Amendment

Among the central issues in this case is whether Mack has asserted an actionable retaliation claim. Mack avers that Roberts and Venslosky fired him from his employment because Mack exercised his "right to seek redress by way of (oral) grievance." (Doc. No. 22, Am. Compl. ¶ 35). As the Third Circuit has explained, "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials

9

sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mack v. Yost*, 427 F. App'x 70, 72 (3d Cir. 2011) (quoting *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Once a prisoner shows these elements, the burden shifts to prison officials to prove that they "would have made the same decision absent the protected conduct." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

Defendants assert that Mack has failed to assert an actionable retaliation claim because Mack's informal complaint is not a constitutionally protected activity. (*See* Doc. No. 38 at 11). Filing an administrative grievance against prison officials is a protected activity for purposes of a retaliation claim. *See Robinson v. Taylor*, 204 F. App'x 155, 157 (3d Cir. 2006). In *Robinson*, the Third Circuit relied on *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003), in finding that a prisoner's ability to file an administrative grievance is constitutionally protected. The *Davis* Court also relied on case precedent—*Graham v. Henderson*, 89 F.3d 75 (2d Cir. 1996), and *Franco v. Kelly*, 854 F.2d 584 (2d Cir. 1988)—to support that finding. The *Graham* Court held:

> [F]iling of a grievance and attempt to find inmates to represent the grievants—is constitutionally protected. This court has held that retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983. . . . The right to petition government for redress of grievances—in both judicial and administrative forums—is among the most precious of the liberties safeguarded by the Bill of Rights.

*Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996) (internal punctuation and citations omitted). Similarly, the *Franco* Court held:

> Because of the clear relationship between the right of access to the courts and the right to petition for redress of grievances, we believe that . . . . [the prisoner litigant] should not be any less entitled to relief under section 1983

> because he was addressing his complaints to a state administrative agency rather than to a court of law.

*Franco v. Kelly*, 854 F.2d 584, 589–90 (2d Cir. 1988).

Here, however, Mack had not begun the formal grievance process by the time he was fired from his work assignment. Mack had not even initiated the "informal resolution process" by filing the "Inmate Request to Staff Form." (*See* Doc. No. 22, Am. Compl. ¶ 25; Doc. No. 38-3 at 10). Thus, this Court must determine whether an informal oral complaint to prison officials—without any type of administrative filing—fits within this realm of constitutionally protected conduct. The issue is one of first impression for the Court. *See, e.g.*, *Booth v. Pence*, 354 F. Supp. 2d 553, 561 n.6 (E.D. Pa. 2005), *aff'd*, 141 F. App'x 66 (3d Cir. 2005) (stating in dictum that "[t]he parties have not presented, and this court has not found, any Third Circuit decision on whether informal complaints from an inmate to a correctional officer constitute protected activity under the First Amendment right to petition the government for a redress of grievances").

In *Davis v. Goord*, the Second Circuit held that the filing of an administrative grievance is a constitutionally protected activity after reasoning that the right to petition the government for redress is no different whether the governmental entity is an administrative agency or a court of law. 320 F.3d at 352–53. In this case, however, Mack had not filed any type of petition whatsoever with an administrative agency before the alleged retaliation occurred. Moreover, courts should approach prisoner retaliation claims with "sufficient skepticism" because "retaliation claims can be easily fabricated," and courts must avoid "becoming entangled in every disciplinary action taken against a prisoner." *Miskovitch v. Hostoffer*, 721 F. Supp. 2d 389, 396 (W.D. Pa. 2010); *accord Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003); *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Woods v.*

11

*Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). Indeed, "the task of prison administration is difficult, and [] courts should afford deference to decisions made by prison officials, who possess the necessary expertise." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

Because Mack had not filed a petition with an administrative agency, whether by formal or informal means, Mack has not shown constitutionally protected conduct for the purposes of a retaliation claim. An oral complaint to a prison guard is not a petitioning for the redress of grievances guaranteed by the First and Fourteenth Amendments. This finding is one of first impression for the Court, but one that remains consistent with applicable case law. *See, e.g., Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 664 (S.D.N.Y. 2000) (indicating in dicta that "case law can be read to suggest that the administrative remedies for which an inmate enjoys a First Amendment right of petition are limited to those set forth under state administrative law, such as sending a complaint to a state bureau of prisons, as opposed to informal or intra-prison complaints"). The Court will therefore dismiss Mack's retaliation claim.

### B. Statutory Claims under the RLUIPA

Mack further alleges in his amended complaint that Defendants violated the RLUIPA. (Doc. No. 22, Am. Compl. ¶¶ 34, 36). Defendants contend that Mack has failed to establish a prima facie case under the RLUIPA because the Act does not apply to federal prisons. Defendants further assert that the Prison Litigation Reform Act of 1995 ("PLRA"), Pub. L. No. 104-134, §§ 801–810, 110 Stat. 1321, 1321–77 (1996), precludes this Court from considering claims under the RLUIPA.

### 1. Administrative Exhaustion under the PLRA

Before addressing the merits of Mack's statutory claims, the Court must consider whether Mack has satisfied the PLRA's administrative exhaustion scheme.[6] Under the PLRA, a prisoner must exhaust any remedies available through the prison grievance system before filing suit in federal court. Specifically, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2006). Although courts have only begun to "define the contours" of the PLRA's exhaustion provision, *see Spruill v. Gillis*, 372 F.3d 218, 222 (3d Cir. 2004), it is clear that unexhausted claims cannot be brought in court. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

In this case, Mack initiated the formal administrative grievance process by filing Form BP-9 ("Request for Administrative Remedy"), which stated, in pertinent part:

> I was Discriminated against, And I got fired from my job for no reason. Mr. Doug Roberts placed his hand on me in a threatening manner, and I asked what is your problem. He stated "Do you have a problem with me placing my hands on you" And I stated yes I do. Then Mr. Roberts said you will be looking for another job soon. Mr. Roberts placed a lable [sic] (sticker) on my back stating (I Love Bacon) which is clearly forbidden in Islamic belief. And that's not the first time Mr. Roberts made Racist Religious remarks about my religious beliefs. Such as "There's no good Muslims except Dead Muslims." Which is clearly . . . . [an] attack [on] my first Amendment rights to freely practice my religious belief, and which caused a hostile environment. . . .

---

[6] Defendants also argue that Mack has not exhausted his available administrative remedies with respect to other claims, including Mack's retaliation claim and the claim that Yost, Kuhn, and Stephens personally violated Mack's constitutional rights. Because the Court has already determined that Mack's alleged constitutional claims are without merit, it will not address these arguments.

(Doc. No. 38-3 at 2). Defendants concede that Mack has properly exhausted the grievance procedure with regard to the allegations in Form BP-9. (Doc. No. 38 at 27; Doc. No. 38-1 at 3–4). Thus, in asserting that Mack has not exhausted available administrative remedies with regard to his RLUIPA claim, Defendants essentially argue that the grievance forms and the complaint must be identical. But this is an incorrect interpretation of the PLRA's exhaustion requirement. "As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint are not required by the PLRA." *Jackson v. Carroll*, 643 F. Supp. 2d 602, 614 (D. Del. 2009) (citing *Woodford v. Ngo*, 548 U.S. 81, 95 (2006)). Perfect overlap is not necessary because the PLRA requires inmates to exhaust the administrative process "even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief." *Jackson*, 643 F. Supp. 2d at 614 (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001).

Here, Mack claims that Defendants violated his rights under the RLUIPA; in doing so, Mack alleges the same facts set forth in BP-9. Because the grievance forms and the amended complaint have a shared factual basis, Mack has properly exhausted his available administrative remedies with regard to the RLUIPA claim. Defendants' PLRA exhaustion argument is without merit.

### 2. RLUIPA Claim

The next issue this Court must address is whether Mack has stated an actionable claim under the RLUIPA. For purposes of the RLUIPA, "government" is defined as (1) "a State, county, municipality, or other governmental entity created under the authority of a State"; (2) "any branch, department, agency, instrumentality or official" thereof; and (3) "any other person acting under color of State law." 42 U.S.C. § 2000cc–5(4)(A). Because

14

the RLUIPA does not apply to federal prisons, Mack cannot assert a claim under the RLUIPA. *See, e.g., Rogers v. United States*, 696 F. Supp. 2d 472, 486 (W.D. Pa. 2010). The Court will therefore dismiss Mack's RLUIPA claim.

### i. Potential RFRA Claim

Although Mack does not allege a violation of the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq.*, Defendants argue in their brief in support of the motion to dismiss that Mack cannot state a claim under this Act. (*See* Doc. No. 28 at 24). Because provisions under the RFRA are "nearly identical" to those under the RLUIPA, *see Norwood v. Strada*, 249 F. App'x 269, 271 (3d Cir. 2007), the Court will address whether Mack can assert an actionable RFRA claim.

The Supreme Court has held that the RFRA is unconstitutional as applied to state and local governments, *see City of Boerne v. Flores*, 521 U.S. 507, 532 (1997), but RFRA claims "remain viable" against the federal government. *See Jama v. Esmor Corr. Servs. Inc.*, 577 F.3d 169, 172 n.4 (3d Cir. Aug. 12, 2009) (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 439 (2006)). Under the RFRA, the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a) (2006). Once the plaintiff establishes a prima facie case, the government must show that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1)(b)(1)–(2). The RFRA does not define the term "substantially burden," but the Third Circuit has held that a substantial burden lies where

15

> 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Norwood*, 249 F. App'x at 271 (citing *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007) (capitalization in original)).

Here, Mack does not allege how prison officials substantially burdened the exercise of his religion. Mack does not claim that Defendants forced him to choose between following his religion and forfeiting benefits otherwise available to him, nor does Mack claim that Defendants pressured him to modify his religious behavior. Instead, Mack states in his amended complaint that Defendants provided him with "a suitable area to pray during breaks" when his prayers overlapped with work hours. (*See* Doc. No. 22, Am. Compl. ¶ 32). Mack also states that Defendants "insured [sic] that non pork or halal (lawful) products were made available to [M]uslim and [J]ewish inmates alike for purchase from the commissary." (*Id.* ¶ 33). After carefully reviewing Mack's amended complaint, the Court finds that Mack cannot assert an actionable claim under the RFRA because Defendants did not substantially burden his religious exercise.

### ii. Potential Free Exercise Claim

In Mack's memorandum in opposition to Defendants' motion to dismiss (Doc. No. 42), Mack argues that he need not show Defendants "substantially burdened" his religious exercise because Defendants intentionally harassed him. Such an argument gives rise to a potential free exercise claim under *Bivens*, although Mack does not assert one in his amended complaint. The Court will nevertheless consider the merits of such a claim.

16

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend. I. "Depending on the nature of the challenged law or government action, a free exercise claim can prompt either strict scrutiny or rational basis review." *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 165 (3d Cir. 2002). The distinction between these levels of scrutiny is that, to "survive strict scrutiny, a challenged government action must be narrowly tailored to advance a compelling government interest, whereas rational basis review requires merely that the action be rationally related to a legitimate government objective." *Tenafly Eruv Ass'n, Inc.*, 309 F.3d at 165 n.24. When the government intentionally discriminates against religious exercise, no balancing test is necessary; rather, "strict scrutiny applies and the burden on religious conduct violates the Free Exercise Clause unless it is narrowly tailored to advance a compelling government interest." *Id.* at 165 (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532, 542 (1993)).

To assert a valid free exercise claim, Mack must show that government actors intentionally discriminated against his religious exercise. Mack has failed to do so. To support his free exercise argument, Mack cites *Brown v. Borough of Mahaffey, Pa.*, 35 F.3d 846 (3d Cir. 1994), in which the Third Circuit held that a "substantial burden" analysis is inappropriate in cases involving the "intentional burdening of religious exercise." *Id.* at 849. But unlike the government actors in *Brown v. Borough of Mahaffey*, who intentionally impeded individuals from practicing their religion,[7] Defendants in this

---

[7] The defendants in *Brown* intentionally erected a gate to block access to "tent revival meetings." 35 F.3d at 848. Plaintiffs had to park their automobiles outside the gate and walk 100 to 200 feet to reach the tent. The trial court found that plaintiffs failed to show a "substantial burden" on their religious exercise, as required by the RFRA. *See id.* The Third Circuit, however, stated that "[t]he 'substantial burden' requirement was developed in the Supreme Court's free exercise jurisprudence, and codified in the . . . [RFRA], in order to balance the tension between religious rights and valid government goals advanced by 'neutral and generally applicable laws.'" *Id.* at 849. The "substantial burden" analysis is inappropriate when government actors

17

case did not prevent Mack from exercising his religious beliefs. Mack does not state that Defendants denied him the opportunity to pray, to eat foods of his choosing, to congregate with inmates of similar belief, to read religious texts, or to choose any other method of exercising his religious beliefs. Instead, Mack states in his amended complaint that Defendants permitted him to attend "Jumah (Friday) services," they provided him a "suitable area to pray" during work, and they made available "halal (lawful) products" in the commissary. (Doc. No. 22, Am. Compl. ¶¶ 31–33). Accordingly, Mack cannot assert an actionable free exercise claim under *Bivens*.

## VI. CONCLUSION

For the reasons enumerated above, the Court finds that Mack has failed to state a claim upon which relief can be granted. To be clear, the Court in no way condones or finds acceptable the alleged conduct of Defendant Venslosky. Rather, if the alleged conduct did occur, prison officials should have addressed this conduct in a personnel action aimed at improving professional standards for prison employees. But for reasons already stated, the Court will grant Defendants' motion (Doc. No. 36) and dismiss Mack's amended complaint (Doc. No. 22) with prejudice.[8] An appropriate order follows.

---

intentionally discriminate against religious exercise because this action serves no legitimate purpose. *Id.* In cases where the government intentionally impedes plaintiff's religious activity, therefore, plaintiffs may assert a free exercise claim regardless of whether the claim fits under the RFRA.

[8] The Court notes that Mack was granted leave to amend on April 12, 2012 (*see* Doc. No. 21) and that Mack filed an amended complaint on May 5, 2012 (Doc. No. 22). Permitting another curative amendment in this case would be futile in that amendment would not cure the deficiencies.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES MACK,<br><br>   Plaintiff,<br><br>v.<br><br>JOHN YOST, *Warden*; TIM KUHN, *Associate Warden*; JEFF STEVENS, *Trust Fund Officer*; D. VESLOSKY, *Correctional Officer*; and DOUG ROBERTS, *Correctional Officer*,<br><br>   Defendants. | CIVIL ACTION NO. 3:10-264<br><br>JUDGE KIM R. GIBSON |

## ORDER

AND NOW, this 24th day of October, 2013, upon consideration of Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. No. 36), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's amended complaint (Doc. No. 22) is **DISMISSED** with prejudice, and the Clerk of Court is directed to **CLOSE** this case.

BY THE COURT:

/s/ Kim R. Gibson
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

Charles Mack, Reg. No. 51900-066
F.C.I. Loretto
P.O. Box 1000
Loretto, PA 15940