## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES MACK,** | ) | **Case No. 3:10-cv-264** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFF STEVENS,** *trust officer;* | ) | |
| **D. VESLOSKY,** *correctional officer;* **and** | ) | |
| **DOUG ROBERTS,** *correctional officer,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.  Introduction

Presently pending before the Court is the Motion for Summary Judgment (ECF No. 99)

filed by Defendant Jeffrey Stephens ("Stephens"), Defendant Samuel Venslosky ("Venslosky"),

and Defendant Douglas Roberts ("Roberts").[1]  This Motion has been fully briefed (*see* ECF Nos.

99-102, 105-108, 111-113) and is ripe for disposition.

Plaintiff Charles Mack ("Mack"), a former inmate at the Federal Correctional Institution

in Loretto, Pennsylvania ("FCI-Loretto"), seeks damages for alleged religious discrimination

under constitutional and statutory theories.  After extensive motions practice and appeals, only

two claims remain before this Court: (1) a claim against all remaining Defendants for First

Amendment retaliation in connection with Mack's termination from his paid work assignment in

---

[1] Throughout this Memorandum Opinion, the Court has spelled Defendants' names in accordance with the
spellings used by Plaintiff and Defendants in all of the summary-judgment-related filings in this case. (*See*
ECF Nos. 99, 100, 101, 102, 105, 106, 107, 108.)  However, the Court has not altered the spelling of the
Defendants' names in the caption from that used by Mack in his Amended Complaint. (*See* ECF No. 22.)
It appears to be appropriate for the parties to address this issue through a motion to correct caption.

the commissary and (2) a claim against Roberts and Venslosky for a violation of Mack's rights under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1(a), for alleged anti-Muslim harassment and hostility which caused Mack to limit his praying at work. *See Mack v. Warden Loretto FCI*, 839 F.3d 286, 306 (3d Cir. 2016).

In the instant Motion, Defendants move for the dismissal of these remaining claims. (*See* ECF Nos. 99, 100.) However, Defendants do little more than repeat the same unavailing arguments that the United States Court of Appeals for the Third Circuit has already rejected *in this case*. *See id*. Thus, because this Court is not persuaded that the summary judgment record materially differs from the allegations of Mack's Amended Complaint or that there has been an intervening change of law since the Third Circuit's most recent opinion in this case,[2] this Court must allow the two remaining claims to proceed to trial.

For the reasons that follow, Defendants' Motion for Summary Judgment (ECF No. 99) is **DENIED.**

## II. Jurisdiction and Venue

All of Mack's claims arise under the Constitution and laws of the United States. Therefore, this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

A substantial portion of the events giving rise to Mack's claims occurred in the Western District of Pennsylvania. Thus, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

---

[2] The Third Circuit has issued two opinions in this case. *See Mack v. Yost*, 427 F. App'x 70 (3d Cir. 2011); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 293-94 (3d Cir. 2016). Unless otherwise specified, all references in this Memorandum Opinion to a decision by the Third Circuit in this case are references to the latter of these two opinions, i.e., the opinion filed on October 11, 2016. *See Mack*, 839 F.3d at 293-94.

III.    **Relevant Procedural History**[3]

Mack filed the operative seven-page Amended Complaint in this case on May 4, 2012. (ECF No. 22.) Extended litigation before this Court and the United States Court of Appeals for the Third Circuit ensued.[4]

Following the Third Circuit's second remand of this case on October 11, 2016, two claims remain pending before this Court: (1) a claim against all remaining Defendants for First Amendment retaliation in connection with Mack's termination from his paid work assignment in the commissary and (2) a claim against Roberts and Venslosky for a violation of Mack's rights under RFRA for alleged anti-Muslim harassment and hostility which caused Mack to refrain from praying at work. *See Mack*, 839 F.3d at 306.

Most pertinent here, the remaining Defendants timely[5] filed the instant Motion for Summary Judgment, Brief in Support thereof, Concise Statement of Undisputed Material Facts, and Appendix thereto on June 20, 2018. (*See* ECF Nos. 99-102.) Mack timely[6] filed his Response in Opposition to Defendants' Motion for Summary Judgment and Brief in Opposition to

---

[3] Due to the extensive procedural history of this case, the Court includes only the procedural history pertinent to the instant Motion for Summary Judgment. However, this Court relies on, and incorporates by reference, the procedural history authored by the United States Court of Appeals for the Third Circuit in its precedential opinion in this case. *See Mack*, 839 F.3d at 293-94 (providing a detailed procedural history in Part I.C of the opinion). The Third Circuit's procedural history, *see id.*, summarizes the major procedural happenings in this case that are not included in the instant Memorandum Opinion's procedural history. *See infra* Part III.

[4] *See supra* note 3.

[5] On June 11, 2018, this Court granted a Consent Motion, extending the deadline for filing motions for summary judgment by two weeks. (*See* ECF Nos. 95, 96.)

[6] On July 19, 2018, this Court granted a Consent Motion, extending the deadline for filing opposition to Defendants' Motion for Summary judgment by two weeks. (ECF Nos. 103, 104.)

Defendants' Motion for Summary Judgment on August 3, 2018. (ECF Nos. 105, 106.) Defendants filed their reply opposing Mack's submissions on September 7, 2018.[7] (ECF Nos. 111-113.)

The Court has fully reviewed and considered all of the relevant filings pertaining to Defendants' Motion for Summary Judgment. Accordingly, Defendants' Motion for Summary Judgment is now ripe for disposition.

## IV. Relevant Factual History

The following facts are undisputed unless otherwise noted.[8]

Mack is a practicing Muslim and a former inmate at FCI-Loretto. (ECF No. 101 ¶ 1; ECF No. 108 ¶ 1.) Mack worked for pay in FCI-Loretto's commissary from May 26, 2009 until he was terminated on October 21, 2009. (ECF No. 101 ¶ 2; ECF No. 108 ¶ 2.)

Throughout the events pertinent to this case, Stephens was the FCI-Loretto Trust Fund Officer with supervisory oversight of the commissary and over Roberts and Venslosky. (ECF No. 101 ¶ 3; ECF No. 108 ¶ 3.) However, Stephens did not have responsibility for hiring or firing inmate workers in the commissary. (ECF No. 101 ¶ 4; ECF No. 108 ¶ 4.) Roberts worked in the commissary, where his duties included supervising the inmate workers and selling commissary items to inmates. (ECF No. 101 ¶ 5; ECF No. 108 ¶ 5.) Venslosky was a Material Handler

---

[7] On August 27, 2018, the Court granted a Consent Motion, granting an extension *nunc pro tunc* for the filing of Defendants' reply until September 7, 2018. (ECF No. 110.) The Court notes that this Consent Motion was filed four days after the deadline for filing a reply passed on August 17, 2018. *See* LCvR 56.D ("Within 14 days of service of the opposing party's submission in opposition to the motion for summary judgment, the moving party may reply to the opposing party's submission in the same manner as set forth in LCvR 56.C."). Despite this late filing, the Court has permitted the extension and fully considered Defendants' reply.

[8] The Court derives these facts from a combination of Defendants' Concise Statement of Undisputed Material Facts (ECF No. 101), Defendants' Appendix of Exhibits thereto (ECF No. 102), Mack's Response to Defendants' Concise Statement of Undisputed Material Facts (ECF No. 108), and Mack's Appendix of Exhibits thereto (ECF No. 107).

Supervisor in the commissary, where his duties included supervising the inmate workers and selling commissary items to inmates. (ECF No. 101 ¶ 6; ECF No. 108 ¶ 6.)

Venslosky fired Mack from his commissary job with the explanation that Mack was caught bringing in another inmate's commissary slip—an action for which an inmate commissary worker may be fired, at the discretion of prison staff. (ECF No. 101 ¶¶ 7-9; ECF No. 108 ¶¶ 7-9.) Mack denies that he brought in another inmate's commissary slip and argues that this explanation for his firing is mere pretext for the discriminatory motivation for his firing. (*See* ECF No. 108 ¶¶ 7-9 and New Matter.) Stephens, Roberts, and Venslosky all admit that Mack was a good and obedient commissary worker; they had no concerns about his work performance. (ECF No. 108 at 5.)[9]

At his deposition, Mack testified that Roberts and Venslosky "would permit [him] to attend Jumu['Jah (Friday) services, after [he] would inform them of such time for service," that he "made up" for missed prayers after work, and that he did not stop practicing his religion. (ECF No. 101 ¶¶ 10-16; ECF No. 108 ¶¶ 10-16.) Mack further stated that Venslosky gave him what Defense Counsel refers to as "the look," which Mack interpreted as discriminatory to his religion and critical of his desire to pray during work hours. (ECF No. 101 ¶¶ 11-14; ECF No. 108 ¶¶ 11-14.)

---

[9] *See infra* note 10.

Beyond these aforementioned deposition excerpts identified by Defendants' filings, it is undisputed[10] that Mack testified as follows:[11]

(1) Prior to Mack's firing in October 2009, Roberts told Mack, "I don't like Muslims" on multiple occasions.

(2) Approximately two weeks before Mack's firing in October 2009, Roberts told Mack, verbatim, "There is no good Muslim except a dead Muslim."

(3) At the end of October 2009, Roberts slapped a sticker on Mack's back which read, "I love pork bacon." When Mack confronted Roberts about the sticker, Roberts replied, "Why? You didn't like it."

(4) Mack raised concerns about his treatment by Roberts and Venslosky to Stephens—their supervisor. Stephens promised that he would "look into it."

(5) Mack complained about the aforementioned treatment to Roberts directly, while Venslosky was within earshot. Roberts responded by stating, "You are not going to be here long." Mack was fired less than two weeks later.

(6) Venslosky sarcastically asked Mack whether Muslim was a religion.

---

[10] While Defendants repeatedly deny that the events discussed in Mack's "New Matter" actually occurred, they admit that Mack testified regarding such conduct in his deposition. (*See* ECF No. 112 at 1-3.) The Court further notes that in spite of Defendants' assertions that the allegations in Mack's "New Matter" are "wholly unsupported," (*id.* ¶¶ 9-10), Mack's counsel diligently and precisely cited to specific portions of the record, namely Mack's deposition, to support the content of the "New Matter." (See ECF No. 108 at 4-5.)

[11] The content of the following eight numbered paragraphs is derived from the "New Matter" contained in Mack's Response to Defendants' Concise Statement of Undisputed Material Facts. (*See* ECF No. 108 at 4-5.) As discussed *supra*, Defendants admit that Mack testified regarding the conduct discussed in his "New Matter" in his deposition. *See supra* note 10.

(7) Venslosky witnessed Roberts' behavior toward Mack and failed to intervene. Venslosky would "egg [Roberts] on" and "always sit[] there grinning."[12]

(8) When Mack was in the back corner of the commissary praying, Roberts and Venslosky would go to the same area for no apparent reason, kick over boxes, and speak/joke loudly. Mack interpreted this behavior as a purposeful attempt to disrupt his prayers.

Mack also testified that his religious practices were curtailed because he "couldn't pray at the exact scheduled time" as would be appropriate for his religious beliefs when he was working at the commissary because if he did, "a whole lot of foolishness would come into the scenario of trying to do that." (ECF No. 107-1 at 8.)

## V. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle*

---

[12] *See* ECF No. 107-1 at 26-27.

*Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## VI.  Discussion

Defendants argue that they are entitled to summary judgment based on four theories: (1) Mack's RFRA claim fails because he has failed to establish that his exercise of religion was substantially burdened; (2) Mack's retaliation claim fails because First Amendment claims are not cognizable under *Bivens*; (3) Roberts and Venslosky are entitled to qualified immunity; and (4)

-8-

Mack failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). (*See generally* ECF No. 100.) The Court will address each of these arguments in turn below.

In summary, the Court finds Defendants' arguments unavailing, primarily because nothing presented to this Court for the purposes of summary judgment changes the determinations made by the Third Circuit in its most recent opinion in this case. *See Mack*, 839 F.3d at 306.

### A. Mack's RFRA Claim May Proceed to Trial

#### 1. Introduction

First, this Court addresses Mack's claims that Roberts and Venslosky, in their individual capacities, violated RFRA through their purported anti-Muslim harassment and hostility toward Mack.

Just as the Third Circuit held that the allegations of Mack's Amended Complaint were sufficient when the Circuit denied Defendants' request to dismiss Mack's RFRA claim, *see Mack*, 893 F.3d at 301, this Court now holds that the summary judgment record is sufficient for a reasonable jury to conclude that Roberts and Venslosky violated RFRA.

#### 2. The Remedial Scope of RFRA

As the Third Circuit articulated in this case, Congress enacted RFRA "in order to provide very broad protection for religious liberty." *Id.* (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2760 (2014)). RFRA prohibits the "Government" from "substantially burden[ing] a person's exercise of religion even if the burden results from a rule of general applicability," unless the "Government" can "demonstrate[] that application of the burden to the person—(1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* (quoting 42 U.S.C. § 2000bb–1(a)–(b)). RFRA expressly provides a private cause of action against the "government" for "appropriate relief." *Id.* (quoting 42 U.S.C. § 2000bb–1(c)). "Government" is defined as "includ[ing] a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." *Id.* (quoting 42 U.S.C. § 2000bb–2(1)).

Most relevant to the instant case, the Third Circuit specifically held that RFRA permits suits seeking money damages against individual officers for their *ultra vires* acts, irrespective of the existence or nonexistence of a law, regulation, or policy. *See id.* at 301-02. Thus, as the Third Circuit has already held, Mack's RFRA claim falls within the scope of the statute because he seeks money damages against the individual officers Roberts and Venslosky for *ultra vires* acts. *See id.*

## 3. A Reasonable Jury Could Conclude that Mack's Exercise of Religion was "Substantially Burdened"

Looking to the merits of Mack's claims, to establish a prima facie case under RFRA, Mack must demonstrate that the government (1) substantially burdened (2) a sincere (3) religious exercise. *See id.* at 302 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 428 (2006)). As has been the case throughout this matter, Defendants do not dispute the sincerity of Mack's exercise of his religious beliefs; thus, the only issue is whether Mack has produced sufficient evidence that his exercise of religion was substantially burdened. *See id.*

Although RFRA does not define "substantial burden," the Third Circuit has explained that a substantial burden exists where (1) "a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates

-10-

versus abandoning one of the precepts of his religion in order to receive a benefit" or (2) "the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* (quoting *Washington v. Klem*, 497 F.3d 272, 280 (3d Cir. 2007)).

Here, the allegations of the Amended Complaint upon which the Third Circuit relied in its earlier decision in this case and the evidence that Mack produced in opposition to Defendants' Motion for Summary Judgment are not meaningfully different. And, in regard to those similar allegations in Mack's Amended Complaint, the Third Circuit wrote:

> Mack argues that the combination of Officer Roberts' anti-Muslim harassment and Officer Venslosky's tacit approval created a hostile work environment that caused him to stop praying at work. We can reasonably infer from these allegations that Mack previously was in the practice of praying at work before the harassment took place. Although Mack concedes that the officers did not directly command him to cease praying, a burden can be "substantial" even if it involves indirect coercion to betray one's religious beliefs. Because we think the indirect pressure the officers placed on Mack may very well have substantially burdened his religious exercise, we conclude that his allegations are sufficient to survive a motion to dismiss.

*Id.* (footnotes omitted). The same conclusion is warranted now.

The content of the record, *see supra* Part IV, is sufficient for a reasonable jury to conclude that Roberts and Venslosky's anti-Muslim comments, conduct, and tacit approval created a hostile and harassing environment "substantial" enough to dissuade Mack from practicing his religion by praying at work as he had prior to the harassment. While a reasonable jury need not reach such a conclusion, the evidence is sufficient for a reasonable jury to conclude that the indirect coercion of Roberts and Venslosky "substantially burdened" Mack's religious exercise by pressuring him into altering his prayer rituals—a fundamental tenant of his faith. *See supra* Part V.

-11-

A reasonable jury could certainly disbelieve all or some of Mack's testimony or could conclude that any interference with Mack's religious practices was trivial and insubstantial. But, a jury, as reasonable factfinder, must decide what exact actions Defendants took and whether those actions constituted a substantial burden on Mack's exercise of his religion.

All precedential opinions of the Third Circuit are, of course, binding precedents on this Court, and, moreover, the Third Circuit's most relevant precedent for the instant Motion comes from *this exact case*. This Court cannot and will not contravene the explicit guidance of the Third Circuit by coming to any other conclusion given the similitude of the allegations of the Amended Complaint and the summary judgment record. *See Mack*, 839 F.3d at 301-02. Therefore, Mack's RFRA claim may proceed to trial.[13]

## B. Mack's Constitutional Retaliation Claim Under *Bivens* May Proceed to Trial

### 1. Introduction

Second, the Court addresses Mack's First Amendment Retaliation claim. Specifically, Mack claims that he was terminated from his paid work assignment at the FCI-Loretto commissary in retaliation for orally complaining to Stephens about Roberts and Venslosky's conduct.

Defendants argue that this Court should not "extend" *Bivens* to Mack's First Amendment retaliation claim and that the Supreme Court's recent opinion in *Ziglar v. Abassi*, 137 S. Ct. 1853

---

[13] The Court notes that Defendants never argue they had a compelling interest justifying their actions or that this interest was furthered by the least restrictive means possible. *See Garraway v. Lappin*, 490 F. App'x 440, 444 (3d Cir. 2012) (citing *Small v. Lehman*, 98 F.3d 762, 767 (3d Cir. 1996)). Thus, the Court does not provide analysis on these points.

(2017), necessitates such a holding. (*See* ECF No. 100 at 3-20.) As with Defendants' argument regarding Mack's RFRA claim, the Third Circuit has already ruled on the availability of *Bivens* for Mack's claims *in this exact case*. *See Mack*, 839 F.3d at 296-97. This Court is bound to hold likewise. This Court also holds that neither *Ziglar*, nor any other intervening precedent supersedes the Third Circuit's prior holdings in this case.

### 2. Legal Standard for *Bivens* Claims

In order to determine whether an implied cause of action arises under *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), courts must first assess whether the claim presents a "new context," i.e., whether the claim is "different in any meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859.

If the claim does not present a new context, no further analysis is needed. *Id.* If the claim is a "new context," the Court must assess (1) whether any adequate alternative remedy amounts to a convincing reason for precluding a *Bivens* claim and (2) whether there are any special factors that counsel hesitation in permitting plaintiff's claim to proceed. *See Abbasi*, 137 S. Ct. at 1858-59; *Wilkie v. Robbins*, 551 U.S. 437, 500 (2007).

### 3. Mack Presents a Viable *Bivens* Claim for First Amendment Retaliation

Based upon the same facts underlying the instant Motion for Summary Judgment, the Third Circuit has already concluded Mack asserted a viable claim under *Bivens* with his First Amendment retaliation claim. *See Mack*, 839 F.3d at 297. Now, just as they did unsuccessfully before the Third Circuit, Defendants argue that Mack's claims constitute a "new context" and that *Bivens* should not be expanded to include this "new context." *See id.* However, the Third Circuit

conclusively rejected Defendants' arguments on the same underlying facts, and this Court must

do the same. *See id.*

The Third Circuit wrote:

Although the Supreme Court has never formally extended *Bivens* to First Amendment claims, it seems to have occasionally assumed that First Amendment retaliation claims can proceed under *Bivens*. Our Court, however, has explicitly recognized a *Bivens* action when a prisoner has been retaliated against for exercising his or her First Amendment right to petition.

In *Paton v. La Prade*, we held that a *Bivens* action may be implied directly from the First Amendment. Relying on this general principle, we held in *Milhouse v. Carlson* that a *Bivens* action was available to an inmate who was harassed and transferred to a less desirable prison cell location in retaliation for filing a lawsuit against prison officials. Interpreting the *pro se* complaint as alleging a violation of the First Amendment right of access to the courts, we explained that "[p]ersons in prison, like other individuals, have the right to petition the Government for redress of grievances." This right "must be freely exercisable without hindrance or fear of retaliation." Similarly, in *Mitchell v. Horn*, we held that a *Bivens* action was available to an inmate who was falsely charged with misconduct in retaliation for exercising his First Amendment petition rights. In light of these cases, we reject the Government's plea to not "extend" *Bivens* to Mack's First Amendment retaliation claim. Our precedents make clear that, in this context, a *Bivens* action is already available.

*Id.* at 296-97 (footnotes omitted).

In short, this Court is constrained to follow the guidance of the Third Circuit, especially

given that the Third Circuit's determinations were made *in this case* on the same underlying facts.

Because, as the Third Circuit has held, Mack's claims do not present a "new context," this Court

need not analyze the adequacy of alternative remedies or whether "special factors counsel

hesitation."[14]

---

[14] However, the Court notes that, even if Mack's claims presented a new context, it finds Mack's arguments regarding the lack of alternative remedies and the lack of "special factors counseling hesitation" to be persuasive. (*See* ECF No. 106 at 16-19.)

### 4. Mack has Produced Sufficient Evidence From Which A Reasonable Jury Could Find in His Favor

In a prior decision in this case, the Third Circuit held that "Mack's oral grievance to Stephens regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment. *See id.* at 298-99. Mack has produced evidence—in the form of his own deposition testimony—that he orally complained to Stephens about his perceived mistreatment by Roberts and Venslosky and that he orally complained directly to Roberts in Venslosky's presence. *See supra* Part IV. According to Mack's testimony, Stephens stated that he would "look into it" and Roberts responded by stating that "[y]ou are not going to be here long." *See id.* Mack was fired less than two weeks later. *Id.*

This testimony, when taken in conjunction with the purportedly pervasive harassment and attitudes of Defendants toward Mack's religion and religious practices, would allow a reasonable jury to find that Defendants responded to Mack's oral grievances by terminating his position at the commissary. A reasonable jury certainly need not come to such a conclusion. However, the evidence presented to this Court for the purposes of the present Motion for Summary Judgment is sufficient for a reasonable jury to find in Mack's favor. *See supra* Part V.

### 5. The Supreme Court's Recent Decision in *Ziglar v. Abassi* Does Not Preclude Relief or Affect the Third Circuit's Prior Ruling in This Case

In an effort to distinguish their summary judgment arguments from those that were unsuccessful before the Third Circuit in relation to their Motion to Dismiss, Defendants argue that the Supreme Court's decision in *Ziglar*—decided approximately eight months after the Third Circuit's most recent decision in the present case—strongly cautions against "expanding" *Bivens* actions and requires that this Court not recognize Mack's First Amendment retaliation action

-15-

under *Bivens* here. (*See* ECF No. 100 at 3-7.) Defendants further argue that, subsequent to the Supreme Court's decision in *Ziglar*, the Third Circuit has rejected First Amendment retaliation claims in other contexts, including in a case involving a Transportation Security Administration ("TSA") agent. *See Vanderklok v. United States*, 868 F.3d 189 (3d Cir. 2017); *see also Watlington v. Reigel*, No. 16-32222, 2018 WL 501365, at *3 n.3 (3d Cir. Jan. 22, 2018).

However, neither *Ziglar* nor *Vanderklok* alter the longstanding framework on which the Third Circuit's prior decision in this case relies, *see Mack*, 839 F.2d at 296-97, and both cases involve factually dissimilar contexts involving "sensitive issues of national security." *See Ziglar*, 137 S. Ct. at 1852-54 (involving detainees held on immigration violations in the wake of the September 11, 2001 terrorist attacks); *Vanderklok*, 868 F.3d at 194-95 (involving a man who a TSA agent reported had threatened to bring a bomb to the Philadelphia International Airport).

This Court will not disregard a binding precedent issued by its appellate court, especially a precedent issued *in the same case*. Stated simply, neither the underlying law, nor the underlying facts have meaningfully changed since the Third Circuit's most recent decision in this case. Thus, in accordance with the still applicable principles of that appellate decision, *see Mack*, 839 F.3d at 297, Mack's retaliation claim may proceed to trial.

## C. Defendants Are Not Entitled to Qualified Immunity

Defendants—again reiterating arguments already rejected by the Third Circuit—next assert that Defendants are entitled to qualified immunity. (ECF No. 100 at 20-22.) And, once again, this Court will follow the Third Circuit's guidance and reject Defendants' qualified immunity argument. *See Mack*, 839 F.3d at 299-301.

The Third Circuit explained:

We have long recognized that prisoners have a right to be free from retaliation for exercising their First Amendment right to petition. Indeed, "[r]etaliating against a prisoner for the exercise of [any of] his constitutional rights is unconstitutional." Retaliatory termination is clearly unlawful, both inside and outside the prison context. The fact that the officers retaliated against Mack before he reduced his grievance to writing is inconsequential. While we have never held before today that a prisoner's oral grievance, in particular, is constitutionally protected, we have certainly never suggested that such a grievance is entitled to lower protection than one reduced to writing. And there are myriad cases outside the prison context that make no distinction between oral and written grievances. Thus we have little doubt concluding that prisoners' oral grievances are indeed entitled to constitutional protection. A reasonable official in the prison officers' position should therefore have known that retaliating against Mack for exercising his right to petition, whether in the form of an oral or written grievance, was unlawful. This is especially so if the prison actually encourages its inmates to communicate their concerns orally.

Because we conclude that Mack has sufficiently stated a First Amendment retaliation claim, and that the remaining defendants are not entitled to qualified immunity, we will vacate the District Court's dismissal of this claim and remand to the District Court for further proceedings.

*Id.* at 300-01 (footnotes omitted). Defendants have not offered any new arguments now and do not provide any new facts or law to distinguish the summary judgment stage from the motion to dismiss stage of this litigation. Therefore, this Court must follow the Third Circuit's guidance.

Under the Supreme Court and the Third Circuit's longstanding qualified immunity standard, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 300 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The dispositive

question is whether the violative nature of particular conduct is clearly established." *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

In the present case, the Third Circuit unequivocally concluded that Mack sufficiently pleaded the violation of a clearly established constitutional right because a reasonable prison official in Defendants' position would have known that firing Mack from his commissary position for orally complaining about religious discrimination was unlawful. *Id.* at 300. Because the facts before this Court on summary judgment are not materially distinguishable from those before the Third Circuit at the motion to dismiss stage and the law remains unchanged, this Court, likewise, holds that Defendants are not entitled to qualified immunity.

## D. Mack Exhausted His Administrative Remedies

Lastly, Defendants ineffectually argue that Mack's claims are barred because he failed to exhaust his administrative remedies as required by PLRA. (*See* ECF No. 100 at 26-28.) This argument has been rejected by not only the Third Circuit two years ago, but was also rejected by this very Court five years ago. *See Mack*, 839 F.3d at 296 (holding that Mack had exhausted his administrative remedies); *Mack v. Yost*, 979 F. Supp. 2d 639, 650 (W.D. Pa. 2013) (Gibson, J.) (holding that Mack had exhausted his administrative remedies). Nonetheless, for the sake of thoroughness, this Court will briefly address Defendants' argument, despite its redundancy.

Defendants suggest that Mack's grievances were insufficiently specific to exhaust his administrative remedies. (ECF No. 100 at 26-28.) Yet, at the time of Mack's grievance, the Bureau of Prison's procedures were "silent or vague" regarding the level of detail required in a grievance. *Mack*, 839 F.3d at 295 (quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). And, absent such

guidelines, "an inmate's grievance must at least 'alert[] the prison to the nature of the wrong for

which redress is sought.'" *Id.* (quoting *Strong*, 297 F.3d at 650).

On this exact issue in *this exact case*, the Third Circuit has already concluded:

> Mack clearly alerted prison officials to his principal allegation—i.e., that he was
> removed from his commissary position for a pretextual reason. Even if Mack did
> not detail his allegedly protected speech, his grievance nonetheless notified
> officials that he believed he was unlawfully terminated from his work assignment
> as retaliation for exercising his First Amendment rights. Exhaustion merely
> requires "inmates [to] provide enough information about the conduct of which
> they complain to allow prison officials to take appropriate responsive measures."
> Given this fairly lenient standard, and with no specific guidance from BOP
> grievance procedures, we conclude that Mack exhausted his administrative
> remedies before bringing his First Amendment retaliation claim.

*Id.* (footnotes omitted). This Court agrees with the Third Circuit and its own prior holdings in

this case and, once again, holds that Mack exhausted his administrative remedies.[15]

**VII. Conclusion**

For the foregoing reasons, Mack's Motion for Summary Judgment (ECF No. 99) is

**DENIED**.

In summary, the record before this Court for the purposes of summary judgment does not

materially differ from those allegations upon which the Third Circuit based its prior opinion in

this case—nor has there been an intervening change in law to justify a departure from a

precedential opinion issued by the appropriate appellate court in the exact same case in which

the appellate court already ruled. The Third Circuit's determinations in its prior opinion in this

---

[15] The Court observes that, in a footnote on page two of their brief, Defendants briefly ask that this Court
dismiss Mack's request for punitive damages. This Court denies this request. The record is sufficient for
a reasonable jury to conclude that Defendants' purported pattern of harassment was "motivated by evil
motive or intent" or demonstrated a "reckless or callous indifference" to Mack's federally protected rights.
*Smith v. Wade*, 461 U.S. 30 (1983); *Carlson v. Green*, 446 U.S. 14 (1980).

case are binding on this Court. And, as explained *supra*, Defendants' Motion for Summary Judgment must be denied.

The relevant law has not changed, the relevant facts have not changed, and the Third Circuit's decision was made *in this very case*. Therefore, this Court follows the Third Circuit's guidance and permits this case to proceed to trial.

A corresponding order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES MACK,** | ) | **Case No. 3:10-cv-264** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFF STEVENS,** *trust officer;* | ) | |
| **D. VESLOSKY,** *correctional officer;* and | ) | |
| **DOUG ROBERTS,** *correctional officer,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

**NOW**, this __13th__ day of September 2018, upon consideration of the Motion for

Summary Judgment (ECF No. 99) filed by the remaining Defendants, it is **HEREBY ORDERED**

that Defendants' Motion for Summary Judgment (ECF No. 99) is **DENIED**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**