IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CHARLES MACK,** | ) | **Case No. 3:10-cv-264** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFF STEVENS,** ***trust officer;*** | ) | |
| **D. VESLOSKY,** ***correctional officer;*** **and** | ) | |
| **DOUG ROBERTS,** ***correctional officer,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Presently pending before the Court is the Motion for Summary Judgment, filed by Defendants Samuel Venslosky and Douglas Roberts on January 6, 2021. (ECF No. 140). The Motion is fully briefed (ECF Nos. 140, 141, 142) and ripe for disposition. For the following reasons, the Court **GRANTS** the motion.

## I. Jurisdiction and Venue

All of Mack's claims arise under the Constitution and laws of the United States. Therefore, this Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1331 and 1343.

A substantial portion of the events giving rise to Mack's claims occurred in the Western District of Pennsylvania. Thus, venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2).

## II. Background

On remand from the Third Circuit, the remaining defendants filed the instant motion seeking qualified immunity on Mack's remaining claim under the Religious Freedom Restoration

Act ("RFRA").[1]

Following the Third Circuit's remand of this case, there is one remaining claim: Mack's claim against Defendants Roberts and Venslosky in their individual capacities (the "Defendants") for their alleged violation of Mack's rights under RFRA for alleged anti-Muslim harassment and hostility which caused Mack to refrain from praying while working at the prison commissary. On January 4, 2021, the Court granted the Defendants permission to file a motion for summary judgment raising qualified immunity. (ECF No. 139). The Defendants filed the instant motion seeking summary judgment, contending that they are entitled to qualified immunity on Mack's RFRA claim on January 6, 2021. (ECF No. 140). Mack filed his response in opposition on February 5, 2021. (ECF No. 142).

## III. Relevant Factual History

The following facts are undisputed unless otherwise noted.[2]

Mack is a practicing Muslim and a former inmate at FCI-Loretto. (ECF No. 101 ¶ 1; ECF No. 108 ¶ 1). Mack worked for pay in Federal Correction Institution ("FCI")-Loretto's commissary from May 26, 2009 until he was terminated on October 21, 2009. (ECF No. 101 ¶ 2; ECF No. 108 ¶ 2).

---

[1] The extensive factual and procedural background of this case can be found in the Court's September 13, 2018 Memorandum Opinion (ECF No. 114) and three decisions from the Third Circuit, *Mack v. Yost*, 427 F. App'x 70 (3d Cir. 2011) ("*Mack I*"), *Mack v. Warden Loretto FCI*, 839 F.3d 286 (3d Cir. 2016) ("*Mack II*"), and *Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020) ("*Mack III*").

[2] The Court derives these facts from a combination of Defendants' Concise Statement of Undisputed Material Facts (ECF No. 101), Defendants' Appendix of Exhibits thereto (ECF No. 102), Mack's Response to Defendants' Concise Statement of Undisputed Material Facts (ECF No. 108), and Mack's Appendix of Exhibits thereto (ECF No. 107).

Roberts worked in the commissary, where his duties included supervising the inmate workers and selling commissary items to inmates. (ECF No. 101 ¶ 5; ECF No. 108 ¶ 5). Venslosky was a Material Handler Supervisor in the commissary, where his duties included supervising the inmate workers and selling commissary items to inmates. (ECF No. 101 ¶ 6; ECF No. 108 ¶ 6).

Venslosky fired Mack from his commissary job with the explanation that Mack was caught bringing in another inmate's commissary slip—an action for which an inmate commissary worker may be fired, at the discretion of prison staff. (ECF No. 101 ¶¶ 7-9; ECF No. 108 ¶¶ 7-9). Mack denies that he brought in another inmate's commissary slip and argues that this explanation for his firing is mere pretext for the discriminatory motivation for his firing. (*See* ECF No. 108 ¶¶ 7-9, New Matter). Roberts and Venslosky both admit that Mack was a good and obedient commissary worker; they had no concerns about his work performance. (ECF No. 108 at 5).

At his deposition, Mack testified that Roberts and Venslosky "would permit [him] to attend Jumu['] ah (Friday) services, after [he] would inform them of such time for service," that he "made up" for missed prayers after work, and that he did not stop practicing his religion. (ECF No. 101 ¶¶ 10-16; ECF No. 108 ¶¶ 10-16). Mack further stated that Venslosky gave him what Defendants refers to as "the look," which Mack interpreted as discriminatory to his religion and critical of his desire to pray during work hours. (ECF No. 101 ¶¶ 11-14; ECF No. 108 ¶¶ 11-14).

Beyond these aforementioned deposition excerpts identified by Defendants' filings, it is

undisputed[3] that Mack testified as follows:[4]

(1) Prior to Mack's firing in October 2009, Roberts told Mack, "I don't like Muslims" on multiple occasions.

(2) Approximately two weeks before Mack's firing in October 2009, Roberts told Mack, verbatim, "There is no good Muslim except a dead Muslim."

(3) At the end of October 2009, Roberts slapped a sticker on Mack's back which read, "I love pork bacon." When Mack confronted Roberts about the sticker, Roberts replied, "Why? You didn't like it."

(4) Mack complained about the aforementioned treatment to Roberts directly, while Venslosky was within earshot. Roberts responded by stating, "[y]ou are not going to be here long." Mack was fired less than two weeks later.

(5) Venslosky sarcastically asked Mack whether Muslim was a religion.

(6) Venslosky witnessed Roberts' behavior toward Mack and failed to intervene. Venslosky would "egg [Roberts] on" and "always sit[] there grinning."[5]

---

[3] While Defendants repeatedly deny that the events discussed in Mack's "New Matter" actually occurred, they admit that Mack testified regarding such conduct in his deposition. (*See* ECF No. 112 at 1-3). The Court further notes that, in spite of Defendants' assertions that the allegations in Mack's "New Matter" are "wholly unsupported," (*Id.* ¶¶ 9-10), Mack's counsel diligently and precisely cited to specific portions of the record, namely Mack's deposition, to support the content of the "New Matter." (*See* ECF No. 108 at 4-5).

[4] The content of the following eight numbered paragraphs is derived from the "New Matter" contained in Mack's Response to Defendants' Concise Statement of Undisputed Material Facts. (*See* ECF No. 108 at 4-5). As discussed below, Defendants admit that Mack testified regarding the conduct discussed in his "New Matter" in his deposition.

[5] *See* ECF No. 107-1 at 26-27.

(7) When Mack was in the back corner of the commissary praying, Roberts and Venslosky would go to the same area for no apparent reason, kick over boxes, and speak/joke loudly. Mack interpreted this behavior as a purposeful attempt to disrupt his prayers.

Mack also testified that his religious practices were curtailed because he "couldn't pray at the exact scheduled time" as would be appropriate for his religious beliefs when he was working at the commissary because if he did, "a whole lot of foolishness would come into the scenario of trying to do that." (ECF No. 107-1 at 8).

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted).

## V. Discussion

Defendants argue that they are entitled to summary judgment because they are entitled to qualified immunity for the sole remaining claim.

### A. The Parties' Arguments

In their Motion, Defendants contend that they are entitled to qualified immunity on Mack's RFRA claim because their conduct did not violate Mack's clearly established rights. Defendants first set out RFRA's substantial burden test. (ECF No. 141 at 2–4). Next, Defendants set out the elements and considerations of qualified immunity. (*Id.* at 4–6). Defendants then argue that qualified immunity is available in RFRA claims. (*Id.* at 6–7). Finally, Defendants argue

that it was not clearly established in October 2009 that their conduct violated Mack's clearly established rights under RFRA. (*Id.* at 7–9).

Mack responds that Defendants are not entitled to qualified immunity. (ECF No. 142 at 3–8). First, Mack contends that for a right to be clearly established, the exact factual situation in a prior decision is not required and that the right to be free from religious harassment is clearly established. (*Id.* at 3–4). Second, Mack argues that the Defendants cannot meet the standard required for qualified immunity. (*Id.* at 4–5). Next, Mack argues that this Court and the Third Circuit have already found that the Defendants are not entitled to qualified immunity on Mack's RFRA claim. (*Id.* at 5–6). Finally, Mack responds that Defendants' argument are factually and legally unsupportable.

### B. The Court finds that Defendants are Entitled to Qualified Immunity

Under the Supreme Court and the Third Circuit's longstanding qualified immunity standard, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 300 (3d. Cir. 2016). (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "The dispositive question is whether the violative nature of *particular* conduct is clearly established." *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (emphasis in original).

First, the Court finds that qualified immunity is available to the Defendants for Mack's RFRA claim. As Defendants recognize, the Third Circuit has "not expressly" decided in a precedential decision whether qualified immunity is available in a RFRA claim. (ECF No. 141 at 6). However, in an unpublished decision, the Third Circuit considered whether the defendant prison officials were entitled to immunity in a RFRA claim related to religiously compelled meals, ultimately determining that the plaintiff's right to religiously compelled meals was clearly established and denying qualified immunity. *Potts v. Holt*, 617 F. App'x 148, 150–152 (3d. Cir. 2015). Further, other courts have considered the applicability of qualified immunity to RFRA claims and "many courts which have considered this issue have found that the doctrine of qualified immunity . . . applies to RFRA claims." *Njos v. Carney, No. 3:12-CV-1375, 2017 WL 3224816*, at *8 (M.D. Pa. June 21, 2017), report and recommendation *adopted*, No. 3:12-CV-01375, 2017 WL 3217690 (M.D. Pa. July 28, 2017) (collecting cases). Finally, Mack does not argue in his response that qualified immunity is an inapplicable consideration to claims brought under RFRA. Accordingly, qualified immunity is available to defendants in a claim brought under RFRA.

Second, the Court finds that Defendants' entitlement to qualified immunity has not been specifically addressed by this Court or the Third Circuit. The term "qualified immunity" does not appear anywhere in the Third Circuit's *Mack I* decision. *Mack v. Yost*, 427 F. App'x 70 (3d. Ci.r 2011). Similarly, in Mack II, while finding that Mack had stated a RFRA claim, the Third Circuit's discussion of the RFRA claim never uses the phrase "qualified immunity." *Mack v. Warden Loretto FCI*, 839 F.3d 286, 301–304 (3d. Cir. 2016). Indeed, the Third Circuit expressly addressed qualified immunity in dicussing Mack's (now dismissed) First Amendment Claim but appears to not have addressed qualified immunity in the context of RFRA. *See id*. Finally, in *Mack III*, the Third Circuit

explicitly stated that Mack's RFRA "claim [was] not at issue in this appeal." *Mack v. Yost*, 968 F.3d 311, 315 n.3 (3d. Cir. 2020). Accordingly, the issue of qualified immunity as to Mack's RFRA has not been considered or decided by the Third Circuit.

Nor has this Court addressed the issue of qualified immunity as to Mack's RFRA claim. In the Court's Memorandum Opinion dated September 13, 2018, the Court recognized that the Defendants were raising qualified immunity in their motion for summary judgment. (ECF No. 114 at 8). However, the only argument that Defendants made in support of qualified immunity on the RFRA claim was that Mack "failed to establish a claim under" RFRA.[6] (ECF No. 100 at 26). Defendants did not argue in the alternative that even if Mack had established a claim under RFRA, that violation was not clearly established. "[D]istrict courts have the authority to permit or restrict successive motions for summary judgment." *Flynn v. Dep't of Corr.*, 739 F. App'x 132, 139 (3d Cir. 2018). The Court granted Defendants permission to file their motion raising qualified immunity as to Mack's RFRA claim. (ECF No. 139). Further, the Motion addresses the second prong of the qualified immunity analysis as to Mack's RFRA claim, whether the right was clearly established. As this prong of the qualified immunity analysis was not previously raised, briefed, or decided by the Court, and because Defendants sought and received permission from the Court to file the Motion, the issue of Defendants' entitlement to qualified immunity as to Mack's RFRA claim because the right was not clearly established, is properly before the Court for the first time.

[6] The Court has previously rejected this argument, relying largely on the Third Circuit's decision in *Mack II* because the facts, when construed in favor of Mack as the non-moving party, are substantially similar to the facts alleged in the Amended Complaint and found by the Third Circuit in *Mack II* to state a claim for a violation under RFRA. (ECF No. 114 at 10–12).

Finally, the Court finds that it was not clearly established in October 2009 that the Defendants' conduct violated Mack's clearly established rights under RFRA. When considering qualified immunity, "[t]he dispositive question is whether the violative nature of *particular* conduct is clearly established." *Mack II*, 839 F.3d at 300 (emphasis in original) (internal quotation marks omitted).

At the outset, the Court notes that Defendants misconstrue the factual record. Defendants contend that their conduct was limited to "verbal harassment." (ECF No. 141 at 7). However, Mack's deposition testimony indicates there was one physical incident, when Roberts "slapped" a sticker saying "I love pork bacon" onto Mack's back. However, that single incident appears to be the extent of the physical contact between Mack and the Defendants.[7]

In the September 13, 2018 Memorandum Opinion, the Court found that there was a "similitude of the allegations of the Amended Complaint and the summary judgment record." (ECF No. 114 at 12). In *Mack II*, the Third Circuit found that it was "the indirect pressure the [Defendants] placed on Mack [that] very well [may] have substantially burdened his religious exercise. *Mack II*, 839 F.3d at 304. Indeed, there is no evidence in the record that Defendants *forced* Mack to cease his religious exercise while working in the prison commissary. *See id.* ("Mack concedes that the officers did not directly command him to cease praying.").

At the time of incidents at issue here, it was not clearly established that the indirect pressure created by Roberts' actions and Venslosky's "tacit approval" was violative of Mack's

[7] Mack does not appear to be contending that this incident directly forced him to stop praying while working in the prison commissary.

rights under RFRA.[8] The numerous district court cases cited by Defendants as to the verbal harassment support this conclusion. (ECF No. 141 at 8–9). Further, the Supreme Court case relied upon by the Third Circuit in *Mack II*, finding that Mack had stated a claim for a violation of RFRA, addressed First Amendment concerns, not claims brought under RFRA. *Mack II*, 839 F.3d at 304 n.104 (citing *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450 (1988)). Additionally, as Defendants argue, *Lyng* "did not involve a prison, did not involve a workplace, and did not involve indirect pressure from alleged harassment or alleged 'tacit approval.'" (ECF No. 141 at 7, n.6). Finally, *Lyng* was cited by the Third Circuit for the proposition that indirect pressure may be a substantial burden on religious exercise, not whether Defendants' conduct constituted the violation of a clearly established right.

The cases Mack relies on are easily distinguishable and do not support the contention that "the violative nature of [the] *particular* conduct is clearly established." *Mack II*, 839 F.3d at 300 (emphasis in original). Mack solely relies on cases relating to the denial by prisons of a particular diet an adherent's religious beliefs require. (ECF No. 142 ) (citing *Williams v. Bitner*, 455 F.3d 186, 191 (3d Cir. 2006); *Potts*, 617 F. App'x 148). There is a significant difference between the direct, outright denial, or active limitation of a diet compelled by religious belief and indirect, mostly verbal, conduct that causes a person to voluntarily cease exercising a tenet of his faith. Further, Mack provides no authority for the proposition that conduct similar to Defendants and the indirect pressure that conduct placed on Mack violated his clearly established rights.

---

[8] A different result would, of course, be reached if the conduct at issue were to have occurred today. In *Mack II*, the Third Circuit explicitly held that this indirect pressure was sufficient to state a claim for a violation of RFRA. *Mack II*, 839 F.3d at 304.

There is no doubt that Defendants' conduct was, at best, ill-advised, unprofessional, inappropriate, and resulted in a burden on Mack's prayers. However, the Court finds that, as of October 2009, it was not clearly established that the Defendants conduct violated Mack's rights under RFRA.

## VI. Conclusion

For the foregoing reasons, the Court finds that it was not clearly established in October 2009 that Defendants' conduct was violative of Mack's rights under RFRA. Accordingly, Defendants are entitled to qualified immunity as to Mack's RFRA claim against them in their individual capacities. As this is the sole claim remaining in this case, judgment should be entered in favor of Defendants and against Mack.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHARLES MACK,** | ) | **Case No. 3:10-cv-264** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEFF STEVENS,** ***trust officer;*** | ) | |
| **D. VESLOSKY,** ***correctional officer;*** **and** | ) | |
| **DOUG ROBERTS,** ***correctional officer,*** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

**NOW**, this 15th day of July 2021, upon consideration of Defendants' Motion for Summary Judgment (ECF No. 140), and for the reasons sets forth in the accompanying Memorandum Opinion, it is **HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

**BY THE COURT:**

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**