IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CHARLES MACK,                          )          CIVIL ACTION NO. 3:10-264
                                       )
            Plaintiff,                 )
                                       )          JUDGE KIM R. GIBSON
      v.                               )
                                       )
SAMUEL VENSLOSKY and DOUG              )
ROBERTS, *Correctional Officers Being* )
*Sued in Their Individual Capacities*, )
                                       )
            Defendants.                )
                                       )

MEMORANDUM OPINION

I.      Introduction

        Pending before the Court is Defendants Samuel Venslosky ("Mr. Venslosky") and Doug

Roberts's ("Mr. Roberts") (collectively, the "Defendants") "Motion *in Limine*[.]" (ECF No. 167)

(emphasis in original). The Motion is fully briefed (ECF Nos. 167, 168, 169, 178) and ripe for

disposition. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART AS**

**MOOT** the Defendants' Motion at ECF No. 167.

II.     Background

        A.      Factual Background[1]

_____

[1] The Court derives much of the factual background in this subsection from the parties' Pretrial Statements.
(ECF Nos. 165, 166). In doing so, the Court stresses that it is not deeming any of these assertions established
facts. Rather, the Court relays the parties' averments in order to provide context relative to the resolution
of the Defendants' Motion in Limine.

At this stage in this case, Plaintiff Charles Mack ("Mr. Mack") is advancing one claim against Mr. Venslosky and Mr. Roberts—a claim that they violated his rights under the Religious Freedom Restoration Act (the "RFRA"). (ECF No. 157-2 at 3–5; ECF No. 165 at 1; ECF No. 166).

Specifically, Mr. Mack states that he is a practicing Muslim, and, consistent with the "fundamental precepts of his faith," he "wore a kufi (a religious head garment), prayed five times a day, and attended Jumu'ah services." (ECF No. 165 at 1). Further, while incarcerated at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto"), Mr. Mack "worked in the prison commissary under the supervision of prison employees [Mr.] Roberts and [Mr.] Venslosky." (*Id.* at 2; ECF No. 166 at 1). According to Mr. Mack, the evidence at trial will show that the Defendants "routinely harassed [him] on the basis of his religion … this mistreatment took various forms, from vicious comments, deliberately creating noise and kicking boxes in the area [Mr.] Mack used to pray, and interrupting his daily prayers." (ECF No. 165 at 2). As a "result of this mistreatment," Mr. Mack avers that "he stopped praying at work altogether." (*Id.*).

For their part, Mr. Roberts and Mr. Venslosky state that Mr. Mack was permitted to attend [Jumu'ah] services. (ECF No. 166 at 2). Further, the Defendants deny making the comments that Mr. Mack alleges they made. (*Id.* at 2–4).

Finally, the parties agree that Mr. Venslosky terminated Mr. Mack from his prison commissary job in October 2009. (ECF No. 165 at 3; ECF No. 166 at 4). Mr. Mack avers that the evidence at trial will demonstrate that Mr. Venslosky "terminated him on the *pretextual* grounds that he caught [Mr.] Mack bringing in a commissary slip for another inmate." (ECF No. 165 at 3) (emphasis added). For their part, the Defendants allege that Mr. Venslosky terminated Mr. Mack

*solely* because Mr. Venslosky "saw him bringing another inmate's commissary slip into the commissary to fill the slip—which inmates are told not to do." (ECF No. 166 at 4).

In light of the foregoing, Mr. Mack seeks: (1) compensatory damages in the amount of $10,780.00, excluding interest (the pay he allegedly would have received for his work at the commissary from October 2009 until January 2017, the month in which Mr. Mack was released from incarceration), (2) punitive damages in the amount of $75,000.00, and (3) "attorney's fees, and pre- and post-judgment interest." (ECF No. 165 at 3; ECF No. 166 at 1).

###   B.      Procedural History

On September 15, 2023, the Defendants filed their Motion in Limine, asking that the Court bar Mr. Mack from "introducing evidence regarding his October 2009 termination from the [FCI Loretto] commissary, or seeking lost wages, backpay, or other damages arising out of that termination." (ECF No. 167 at 1). On that same day, the Defendants filed a Brief and Exhibits in Support of their Motion in Limine. (ECF Nos. 168, 169). On September 29, 2023, Mr. Mack filed his Brief in Opposition to the Defendants' Motion in Limine. (ECF No. 178).

Notably, on September 15, 2023, the parties filed their "Joint Pre-Trial Stipulations[.]" (ECF No. 175). Within that document, the parties stated that they:

> [S]tipulate and agree not to introduce any evidence regarding Mr. Mack's termination from the commissary on October 21, 2009, or to argue that Mr. Mack was fired from the commissary on that date for either legitimate or pretextual reasons. The parties further stipulate and agree that Mr. Mack's termination from the commissary was not a "substantial burden" on [his] religious exercise.

(*Id.* at 2).[2]

---

[2] Because the parties have stipulated that they will not introduce any evidence regarding Mr. Mack's termination from the commissary, the Defendants' Motion in Limine is moot to the extent that they ask the Court to bar the introduction of such evidence. Therefore, moving forward, the Court will only concern itself with whether the evidence of Mr. Mack's lost wages is admissible.

III.     **Legal Standard**

A "court's authority to rule on motions in limine comes from its inherent authority to manage trial proceedings before it, not from the Federal Rules of Evidence." *Frobe v. UPMC St. Margaret*, No. 2:20-CV-00957-CCW, 2023 WL 3740782, at *1 (W.D. Pa. May 31, 2023) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). Consistent "with that authority, a court may screen irrelevant or otherwise improper evidence, thereby 'narrow[ing] the evidentiary issues for trial and … eliminat[ing] unnecessary trial interruptions.'" *Id.* (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). However, "a 'trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds.'" *Id.* (quoting *Johnstown Heart & Vascular Ctr., Inc. v. AVR Mgmt., LLC*, No. 3:15-CV-22, 2019 WL 3573663, at *3 (W.D. Pa. Aug. 6, 2019) (internal citation omitted)).

Here, the Defendants' Motion in Limine implicates Federal Rules of Evidence 401, 402, and 403. Federal Rule of Evidence 401 provides that evidence is relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Under Rule 402, relevant evidence is admissible unless the: (1) United States Constitution, (2) a federal statute, (3) the Federal Rules of Evidence, or (4) other rules prescribed by the Supreme Court provide otherwise. FED. R. EVID. 402. However, irrelevant "evidence is not admissible." *Id.* Further, Rule 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## IV.   Discussion

### A.    The Parties' Arguments

The Defendants advance three arguments in support of their motion. (ECF No. 168). First, the Defendants contend that Mr. Mack has consistently argued that it was the allegedly "hostile and harassing environment" at the commissary—not his termination—that constituted a substantial burden on his sincere religious exercise. (*Id.* at 1–3) (internal quotation marks and citation omitted). Therefore, because Mr. Mack's "termination post-dates the alleged 'harassing' behavior—and could not logically create a 'substantial burden' on his religious exercise—the Court should bar its discussion at trial." (*Id.* at 2–3).

Second, the Defendants assert that "any discussion of [Mr. Mack's] termination is likely to confuse the jury and should thus be inadmissible under Fed. R. Evid. 403." (*Id.* at 3). Indeed, the Defendants argue that this is "no longer a retaliation case, and it never was a wrongful discharge or employment discrimination case[,]" but if Mr. Mack is "permitted to seek termination-related damages, the jury may misguidedly think that it is." (*Id.*).

Finally, the Defendants assert that, to the extent Mr. Mack "claims his termination shows some persistent, discriminatory intent—that Mr. Venslosky's decision reflects a pattern of anti-Muslim sentiment among [Mr. Mack's] supervisors—that argument fails." (*Id.* at 4). According to the Defendants, because "there is no *mens rea* requirement under RFRA, it does not matter whether Mr. Venslosky or Mr. Roberts harbored some sort of animus toward [Mr. Mack] or his religion. Their conduct either substantially burdened [his] religious exercise or it didn't." (*Id.*) (emphasis in original).

In response to the Defendants' first argument, Mr. Mack asserts the following:

Mr. Mack does not seek to resuscitate a claim that has already been eliminated or introduce any factual evidence regarding the reason for his subsequent termination. Mr. Mack alleges that the Defendants' actions, regardless of his subsequent termination, substantially burdened his religious exercise to such an extent that it made his continued employment at the commissary untenable. Specifically, the Defendants engaged in a campaign of intentional, repeated malicious harassment against Mr. Mack, with the consequence being that Mr. Mack could no longer perform the duties of his position at the commissary while also freely practicing his religion. Thus, even if Mr. Mack had *not* been terminated, he still could not have maintained his employment in the commissary, while also freely practicing his religion[.]

(ECF No. 178 at 1–2) (emphasis in original).

With respect to the Defendants' second argument, Mr. Mack asserts that, in this case "there is little risk, if any, of confusing the jury. Simply put, no reasonable jury would think the instant case is a 'wrongful discharge' or 'employment discrimination' case, as no evidence as to those claims would be introduced." (*Id.* at 3). Further, Mr. Mack states that he is "open to agreeing to a jury instruction that further clarifies that the jury only considers the evidence of lost wages [] as to damages." (*Id.*).

Finally, Mr. Mack asserts that the Defendants' third argument is moot because the "parties stipulated and agreed 'not to introduce any evidence regarding Mr. Mack's termination from the commissary on October 21, 2009, or to argue that Mr. Mack was fired from the commissary on that date for either legitimate or pretextual reasons.'" (*Id.* at 4) (quoting ECF No. 175 at ¶ 5).

B.   **Analysis**

As the Court noted above, the Defendants' first argument is that Mr. Mack has consistently asserted that it was the Defendants' harassment, not his termination, that constituted a "substantial burden" on the exercise of his religion. However, as Mr. Mack made clear in his Response to the Defendants' Motion in Limine, he is not arguing that his *termination* was a

"substantial burden" on the exercise of his religion (nor could he in light of the parties' stipulation). Rather, he is arguing that the *harassment* he allegedly underwent was a "substantial burden" on the exercise of his religion, and that that harassment warrants an award of approximately $10,700.00 for lost wages.

Therefore, the Court focuses its attention to the following issue: whether, under Rule 403 of the Federal Rules of Evidence, it is appropriate to permit Mr. Mack to argue that he is entitled to approximately $10,700.00 in lost wages for the *harassment* that allegedly occurred at the hands of the Defendants.[3]

---

[3] Before turning its attention to Rule 403, the Court briefly addresses one additional aspect of the Defendants' first argument in support of their Motion in Limine.

The Defendants state that Mr. Mack "has not argued (and should not be permitted to argue) that he somehow faced a choice between continuing to pray and maintaining his job. As part of his retaliation claim, [Mr. Mack] alleged that Mr. Venslosky and Mr. Roberts fired him for *complaining* about his treatment (not for his Muslim faith or prayers)." (ECF No. 168 at 2) (emphasis in original).

For his part, Mr. Mack's argument is that "even if [he] had *not* been terminated, he still could not have maintained his employment in the commissary, while also freely practicing his religion[.]" (ECF No. 178 at 1–2) (emphasis in original). With respect to this argument, the Court notes that the only way it could *possibly* lead to damages for lost wages is if Mr. Mack proves to the jury that he would have eventually resigned from his commissary job due to the alleged harassment (at this point, the Court stops to remark that it finds this argument unavailing for the reasons discussed below, *see infra* Section IV.B.1, but the Court nonetheless continues to discuss this argument here in order to make a point distinct from the one below).

Indeed, if Mr. Mack was harassed, stopped praying, but remained in his job, he would have no claim for lost wages, but he could seek damages for the harassment he allegedly experienced. Conversely, if Mr. Mack was harassed and resigned from his job as a result of that harassment, he may *potentially* have a claim for lost wages. In other words, the necessary factual predicate for Mr. Mack's argument to *potentially* have any effect with respect to lost wages is that the alleged harassment was so severe that it would have led him to resign from his job at the commissary.

However, in his Amended Complaint (which is the operative Complaint in this matter), (ECF No. 22), Mr. Mack did not make a factual allegation that he would have resigned from his job had he not been fired, and he did not make such a factual allegation in his Pretrial Statement. (ECF No. 165). Further, in Mr. Mack's Response to the Defendants' Motion in Limine, which appears to be the first time he implicitly made such an argument, he cited neither any record evidence nor any of his prior briefs to the Court in implicitly arguing that he would have resigned from his commissary job had he not been fired. (ECF No. 178 at 2).

1.   **Evidence of Mr. Mack's Lost Wages is Inadmissible Under Rule 403**

Rule 403 states that the court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

As the Third Circuit has explained, "Rule 403 necessarily requires that the District Court engage in balancing to determine whether the probative value of the evidence is 'substantially outweighed' by the negative factors listed in Rule 403." *Coleman v. Home Depot, Inc.*, 306 F.3d 1333, 1344 (3d Cir. 2002). In balancing, "'the proper equation places on one side the maximum reasonable probative force for the offered evidence,' while 'the other side of the equation should include the *likely* prejudicial impact of the evidence.'" *Id.* (quoting *Federal Rules of Evidence Manual* 242 (Stephen A. Saltzburg et al. eds. 7th ed. 1998) (emphasis in original). The "balancing test in

_____

Therefore, the Court is hesitant to permit Mr. Mack to advance the argument, at trial, that he would have eventually resigned from his job at the commissary because of the Defendants' alleged harassment, thereby leading to lost wages. Among other things, permitting such an argument at this point in this case would be highly prejudicial to the Defendants, who have apparently not had an opportunity to conduct discovery with an eye toward combatting that assertion at trial. *Militello v. Allstate Prop. & Cas. Ins. Co.*, No. 1:14-CV-0240, 2016 WL 3254144, at *4 (M.D. Pa. June 14, 2016) ("'It is well-established that failure to raise an issue in the district court constitutes a waiver of that argument,' *Brenner v. Local 514, United Bd. of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1298 (3d Cir. 1991), and a trial judge has broad discretion to prohibit parties from raising matters which they have failed to pursue in pretrial proceedings.") (citing *Sample v. Diecks*, 885 F.2d 1099, 1106 (3d Cir. 1989)); *see also O'Malley v. Potter*, No. 05-CV-986, 2006 WL 2433315, at *4 (E.D. Pa. Aug. 18, 2006).

Before concluding on this issue, the Court stresses that, at this point in time, it is *not* barring Mr. Mack from testifying regarding the severity of the harassment to which he was allegedly subjected, potentially including the suggestion that that harassment made him want to stop working at the commissary. Rather, the Court *is* stating that it is *extremely hesitant* to permit Mr. Mack to make that factual assertion *relative to a new theory of his claim under the RFRA*—specifically that his alleged desire to resign supports a claim for lost wages—at this point in this case.

Rule 403 ensures that juries are not presented with evidence that is far less probative than it is prejudicial." *Id.*

Therefore, in conducting the necessary analysis under Rule 403, the Court first considers the probative value of the evidence of Mr. Mack's approximately $10,700.00 in lost wages.

### a.    The Probative Value of This Evidence is Very Low

In order to assess the probative value of Mr. Mack's alleged lost wages in this case, the Court must consider both the law under which Mr. Mack's claim arises (the RFRA) and the facts of the case currently before the Court. *Argush v. LPL Fin., LLC*, 759 F. App'x 121, 126 (3d Cir. 2018) (looking to the law under which the claim arose in assessing the relevance and probative value of evidence); *Egan v. Delaware River Port Auth.*, 851 F.3d 263, 276–77 (3d Cir. 2017) (stating that "even the District Court recognized that [the] testimony about the conversation [the witness] overheard was probative of the [defendant's] *alleged discriminatory animus*.") (emphasis added); *Coleman*, 306 F.3d at 1345 ("We note in this regard that the assessment of probative value under Rule 403 should take into consideration the proof value of the particular report as and when offered at trial.").

The Court first turns its attention to the relevant law under which this case arises. Specifically, the Court considers the RFRA's provision for monetary damages in suits against federal officials in their individual capacity.

### i.    The RFRA's Provision for Monetary Damages

The Supreme Court has held that the RFRA's "express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities." *Tanzin v. Tanvir*, 141 S. Ct. 486, 493 (2020). Further, because the remedies provision of

the RFRA is "open-ended on its face, what relief is appropriate is inherently context dependent." *Id.* at 491 (internal quotation marks and citation omitted).

The fact that: (1) the RFRA permits monetary damages against defendants in their individual capacities and (2) the damages provision is inherently context dependent leads the Court to the question—how should courts assess whether monetary damages are appropriate in a case arising under the RFRA? The Court finds that, at least in this case, it is appropriate to answer that question by looking to the law pertaining to monetary damages under 42 U.S.C. Section 1983, for the following two reasons.

First, when the Supreme Court was tasked with deciding whether the RFRA permits monetary damages in suits against federal officials in their individual capacities, the Court looked (at least in part) to Section 1983. *Id.* at 491–92; *see also Landor v. Louisiana Dep't of Corr. & Pub. Safety,* 82 F.4th 337, 342 (5th Cir. 2023) (quoting *Tanzin* and noting that, in that case, the Supreme Court held that because "§ 1983 had always permitted damages for clearly established violations of the First Amendment, parties suing under [the] RFRA must have at least the same avenues for relief against officials that they would have had in the past.") (internal quotation marks and citation omitted). Indeed, Mr. Mack recognized as much when he stated to the Court that "Congress intended to afford the same types of relief for individuals with RFRA claims that were historically available for constitutional violations under 42 U.S.C. § 1983." (ECF No. 178 at 2).

Second, the language that the Supreme Court utilized in outlining the starting point for damages under Section 1983 indicates that that starting point is just as applicable in a claim for damages under the RFRA. With respect to damages for a Section 1983 violation, the Supreme Court has:

> [R]epeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability. Over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.

*Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (internal quotation marks and citations omitted). Indeed, just as with a Section 1983 claim, an individual advancing a claim under the RFRA seeks compensation for injuries "caused by the violation of his legal rights." *Id.*

Therefore, because: (1) the Supreme Court looked to Section 1983 when considering the question of damages under the RFRA and (2) the rationale for tethering tort principles to a claim for damages under Section 1983 applies with equal force in the context of a claim for damages under the RFRA, the Court will consider "the common law of torts," which defines "the elements of damages and the prerequisites for their recovery," as the "appropriate starting point for" the damages inquiry under the RFRA in this case, just as it would in a Section 1983 case. *Hector v. Watt*, 235 F.3d 154, 155 (3d Cir. 2000) (internal quotation marks and citations omitted).

The Court accordingly turns its attention to the Third Circuit's Model Jury Instruction regarding Compensatory Damages in a Section 1983 case, which uses the common law of torts as the starting point for the damages inquiry. *United States v. Petersen*, 622 F.3d 196, 208 (3d Cir. 2010) ("We have a hard time concluding that the use of our own model jury instruction can constitute error[.]"). In relevant part, that jury instruction provides as follows (tailored to the facts of this case):

> Mr. Mack must show that the injury would not have occurred without Mr. Venslosky or Mr. Roberts's act or omission. Mr. Mack must also show that Mr. Venslosky or Mr. Roberts's act or omission played a substantial part in bringing about the injury, and that the injury was either a direct result or a reasonably

probable consequence of Mr. Venslosky or Mr. Roberts's act or omission. There can be more than one cause of an injury. To find that Mr. Venslosky or Mr. Roberts's act or omission caused Mr. Mack's injury, you need not find that Mr. Venslosky or Mr. Roberts's act or omission was the nearest cause, either in time or space. However, if Mr. Mack's injury was caused by a later, independent event that intervened between Mr. Venslosky or Mr. Roberts's act or omission and Mr. Mack's injury, Mr. Venslosky is not liable unless the injury was reasonably foreseeable by him, and Mr. Roberts is not liable unless the injury was reasonably foreseeable by him.

*Chapter 4: Instructions for Civil Rights Claims Under Section 1983*, UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT, https://www.ca3.uscourts.gov/sites/ca3/files/4_Chap_4_July_2023.pdf (last visited Oct. 20, 2023).[4]

### ii. The Facts of the Case Currently Before the Court

As the Court previously noted, the parties have stated to the Court that they:

[S]tipulate and agree not to introduce any evidence regarding Mr. Mack's termination from the commissary on October 21, 2009, or to argue that Mr. Mack was fired from the commissary on that date for either legitimate or pretextual reasons. The parties further stipulate and agree that Mr. Mack's termination from the commissary was not a "substantial burden" on [his] religious exercise.

(ECF No. 175 at 2).

In light of this stipulation, Mr. Mack wants to introduce evidence of his lost wages at trial on the theory that "even if [he] had *not* been terminated, he still could not have maintained his employment in the commissary, while also freely practicing his religion[.]" (ECF No. 178 at 2) (emphasis in original).

Therefore, as the Court explained above, in making this argument, the only tack that Mr. Mack can take is to assert that the alleged harassment would have eventually led him to resign

---

[4] In applying Section 1983 tort principles in the context of Mr. Mack's claim for lost wages under the RFRA, the Court also notes that both Mr. Mack and the Defendants cite this same jury instruction (or parts thereof) in the Proposed Jury Instructions that they submitted to the Court. (ECF No. 171 at 23; ECF No. 173 at 31).

from his job at the commissary. *See supra* Section IV.B. Indeed, if Mr. Mack had continued his employment at the commissary in the face of the alleged harassment, then he would clearly be unable to offer evidence of his lost wages because those lost wages would be irrelevant to his claim under the RFRA. *See supra* Section IV.B.1.a.i.

### iii. Given the Law Under Which Mr. Mack's Claim for Lost Wages Arises and the Facts of the Case Before the Court, the Probative Value of Mr. Mack's Lost Wages is Extremely Low

In light of all of the foregoing, Mr. Mack's factual presentation to the jury at trial could only be the following: (1) he was harassed by the Defendants for exercising his religion, (2) that harassment led him to want to resign, and perhaps even decide to resign, from his job at the commissary, (3) he was terminated from his job at the commissary (for reasons that cannot be explained to the jury and in a manner that cannot be described as a "substantial burden" on the exercise of his religion), and (4) he lost wages that he would have otherwise earned from working at the commissary.

As this recitation of Mr. Mack's potential factual presentation makes clear, any claim by Mr. Mack that the Defendants' alleged harassment caused the lost wages would run headlong into the *parties' stipulation* that Mr. Mack was terminated from his job at the commissary in a manner that did not constitute a "substantial burden" on the exercise of his religion (and therefore cannot be deemed a significant part of his claim under the RFRA). *Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (noting that the elements of a prima facie case under the RFRA are "that the government (1) substantially burdened (2) a sincere (3) religious exercise.") (internal quotation marks and citation omitted). Further, there is plainly a causal connection between Mr. Mack's lost wages and his termination, a termination which, once again, is unrelated to Mr. Mack's claim

under the RFRA. On these facts, the Court finds that evidence of Mr. Mack's lost wages has such low probative value relative to his claim under the RFRA that the Court is uncertain whether such evidence meets the standard of relevance under Federal Rule of Evidence 401. Indeed, the Court is unaware of any legal principle supporting the notion that the alleged harassment in this case, which, at most, made Mr. Mack *contemplate* resigning (or even decide to resign in the future) from the commissary, bears relevance to a claim for lost wages.[5]

> **b.     The Probative Value of This Evidence is Substantially Outweighed by Other Considerations Under Rule 403**

Having set very little weight on the probative value side of the Rule 403 scale, *Coleman*, 306 F.3d at 1344, the Court turns its attention to the following four considerations: the risk of unfair prejudice, confusing the issues, misleading the jury, and wasting time. FED. R. EVID. 403.

With respect to the risk of unfair prejudice, the Court finds that if it permits Mr. Mack to introduce evidence of his lost wages, there is a risk that the jury might conclude that Mr. Venslosky and/or Mr. Roberts are simply bad actors who harmed Mr. Mack financially and

---

[5] For a point of reference, the Court finds the doctrine of constructive discharge helpful. A claim for constructive discharge "has two basic elements. A plaintiff must prove first that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign. But he must also *show that he actually resigned*." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (internal quotation marks and citations omitted) (emphasis added).

In other words, in a constructive discharge case, if an employee: (1) had evidence that he was discriminated against by his employer to the point where a reasonable person in his position would have felt compelled to resign, (2) considered resigning (or decided to resign) as a result of that discrimination, (3) was terminated on a basis that could not be called part of the earlier discrimination, and then (4) sought lost wages on a theory of constructive discharge, the evidence of the lost wages would be irrelevant to the employee's claim for constructive discharge.

Although the Court does not rest its holding on this basis, it finds that the above discussion clarifies the Court's finding here—evidence of Mr. Mack's lost wages clearly has very little (if any) relevance or probative value relative to his claim under the RFRA given his undisputed termination, a termination that cannot itself be described as a violation of the RFRA.

deserve to be punished for that alleged harm, regardless of whether it has any connection to Mr.

Mack's claim under the RFRA. *Argush*, 759 F. App'x at 126. Given that risk, the Court holds that

the risk of unfair prejudice in this case is high.

With respect to the risk of confusing the issues and misleading the jury, if Mr. Mack

proceeds with the factual presentation that the Court set forth above (or one like it), *see supra*

Section IV.B.1.a.iii, there is a substantial risk that the jury will have significant (and unanswered)

questions about the nature of Mr. Mack's termination.[6] For example, the jury may well wonder

why Mr. Mack was terminated. And the jury may be more inclined to connect his lost wages to

his alleged harassment if he was terminated for pretextual reasons, whereas it may be less

inclined to connect his lost wages to his alleged harassment if he was terminated for eminently

valid reasons. However, given the parties' stipulation, the jury cannot know this information.

Without this information, the Court is highly concerned that the issues will become confused, the

jury may be misled, and the jury may be inclined to award damages based on speculation that

has no basis in the evidence presented at trial.

---

[6] Indeed, as the Court noted earlier, Mr. Mack would bear the burden of proving, at trial, that the Defendants' alleged harassment played "a substantial part in bringing about the injury (i.e., lost wages)[.]" *See supra* Section IV.B.1.a.i. In determining whether an actor's conduct is a substantial factor in bringing about an injury, one of the relevant considerations is "the number of other factors which contribute in producing the harm and the extent of the effect which they have in producing it[.]" Restatement (Second) of Torts, § 433 (1965); *Johnson v. City of Phila.*, 837 F.3d 343, 352 (3d Cir. 2016) (citing the Restatement (Second) of Torts when discussing a superseding cause relative to a Section 1983 claim).

Here, Mr. Mack's undisputed termination is clearly another factor which "contribut[ed] in producing the harm[.]" However, given the parties' stipulation, which prevents Mr. Mack introducing any evidence regarding his termination, permitting Mr. Mack to attempt to tether his alleged harassment to his lost wages without explaining the extent of the effect of his termination on those lost wages would leave the jury without critical information, thereby risking substantial confusion of the issues and misleading of the jury.

Finally, the Court finds that there is a significant risk of wasting time if it were to permit Mr. Mack to introduce evidence of his lost wages. Introducing such evidence may lead to a mini-trial regarding side issues that have little (if any) relevance to Mr. Mack's claim under the RFRA, such as the extent of the parties' stipulation and the amount of time for which Mr. Mack may seek lost wages.[7] *Coleman*, 306 F.3d at 1346.

Therefore, the Court finds that the extremely low probative value of the evidence of Mr. Mack's lost wages is substantially outweighed by the danger of the following: unfair prejudice, confusing the issues, misleading the jury, and wasting time at trial. Accordingly, the Court will grant the Defendants' Motion in Limine to the extent that they seek to bar Mr. Mack from introducing evidence of his lost wages, backpay, or other damages arising out of his termination.[8]

## V.    Conclusion

---

[7] The Defendants assert that Mr. Mack could have only worked at the commissary for four years, and he therefore may only seek lost wages for four years' worth of time, beginning with the date that he started working at the commissary. (ECF No. 168 at 4). Mr. Mack counters that he could have worked at the commissary for eight years, and he may therefore seek lost wages for eight years' worth of time, beginning with the date that he started working at the commissary. (ECF No. 178 at 2).

[8] Before concluding, the Court addresses two additional matters.

First, the Court finds that the cases that Mr. Mack cites in his Brief in Opposition to the Motion in Limine are distinguishable from the case currently before this Court. (ECF No. 178 at 2–3). Indeed, among other things, in all three cases that Mr. Mack cites, the plaintiff had adequately plead, shown at the summary judgment stage, or even proven that the defendant's unlawful conduct *was part and parcel to the adverse employment action itself (such as failure to promote or failure to hire)* that led the plaintiff to seek lost wages or the like. *Suppan v. Dadonna*, 203 F.3d 228, 235–38 (3d Cir. 2000); *Gurmankin v. Costanzo*, 626 F.2d 1115, 1117–18 (3d Cir. 1980); *Schelske v. Austin*, No. 6:22-CV-049-H, 2023 WL 5986462 (N.D. Tex. Sept. 14, 2023).

Second, the Court notes the Third Circuit's admonition that "rulings excluding evidence on Rule 403 grounds should rarely be made *in limine*." *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 518 n.10 (3d Cir. 1997) (emphasis in original). In light of the parties' stipulation in this case, the Court finds that this is a rare case where it is appropriate to exclude evidence of Mr. Mack's lost wages prior to trial. However, the Court is free to reconsider this ruling at trial should the evidence warrant doing so. *Id.* The Court notes that it is not foreclosing Mr. Mack from seeking such reconsideration in light of the evidence produced at trial.

For the foregoing reasons, the Court grants the Defendants' Motion in Limine to the extent that they seek to bar Mr. Mack from introducing evidence of his lost wages, back pay, or other damages arising out of his termination. To the extent that the Defendants seek to bar Mr. Mack from introducing evidence of his termination, the Court denies their request as moot in light of the filing of the parties' Pretrial Stipulation. (ECF No. 175).

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES MACK, | ) | CIVIL ACTION NO. 3:10-264 |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| SAMUEL VENSLOSKY and DOUG | ) | |
| ROBERTS, *Correctional Officers Being* | ) | |
| *Sued in Their Individual Capacities,* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

**AND NOW**, this 23rd day of October, 2023, upon consideration of the Defendants'

"Motion *in Limine*[,]" (ECF No. 167) (emphasis in original), **IT IS HEREBY ORDERED** that the

Motion is **GRANTED IN PART**. Specifically, at trial, the Court will bar the Plaintiff from

introducing evidence of his lost wages, backpay, or other damages arising out of his termination

from the commissary.

**IT IS FURTHER ORDERED** that, in light of the parties' Pretrial Stipulation, (ECF No.

175), the "Motion *in Limine*" is **DENIED IN PART AS MOOT**. Specifically, the Court denies the

Motion to the extent that the Defendants ask the Court to bar Mr. Mack from introducing evidence

regarding his termination from the commissary.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE